UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**TERESA MILLS and CLINTON MILLS,**
**individually and as parents and guardians of**
**C.M.,**

          **Plaintiffs,**

**v.**                                                                          Civ. Action No. __3:22-cv-00592__

**CABELL COUNTY BOARD OF**
**EDUCATION, JONNA DAVIS, MICKEY**
**COPLEY, TIFFANY BLACK, NATALIE**
**MASTRANGELO, and JOHN BAKER,**

          **Defendants.**

## **COMPLAINT**

### PRELIMINARY STATEMENT

In recent years, a number of lawsuits have brought to light the egregious neglect and abuse suffered by special needs children in West Virginia public schools. Unfortunately, that neglect and abuse endures in Cabell County, where C.M., a non-verbal child entrusted to the care of Huntington High School, has been battered, belittled, barricaded into a corner, deprived of food and drink, and left to sit in his own feces and urine for extended periods of time.

C.M.'s parents, Plaintiffs Teresa Mills and Clinton Mills, were shown heartbreaking footage of their minor, non-verbal son being verbally and physically mistreated, neglected, and ultimately taken from his classroom—and his school building—for hours at a time by a man who was unknown to them. The Cabell County School Board of Education has been unable to tell Plaintiffs what this man did with their son or why he was permitted to take the minor from the school building.

Despite seeing footage of C.M. being maltreated and inexplicably removed from his classroom without parental consent, Cabell County Board of Education staff and employees have treated Plaintiffs with coldness and callousness, even antagonizing them for seeking answers and endeavoring to hold responsible those who harmed their son.

Distraught by the neglect and abuse they witnessed, and certain that their child and his classmates have been subjected to additional harm, Plaintiffs Teresa Mills and Clinton Mills, as parents, natural guardians and next friend of C.M., allege the following against Defendant Cabell County Board of Education, Defendants Jonna Davis, Mickey Copley, Tiffany Black, Natalie Mastrangelo, and John Baker:

## PARTIES

1.      Plaintiff Teresa Mills the mother of minor child C.M. and is a citizen and resident of Cabell County, West Virginia.

2.      Plaintiff Clinton Mills is the father of minor child C.M. and is a citizen and resident of Cabell County, West Virginia.

3.      C.M. is a disabled, non-verbal minor under the age of 18 who resides with his parents in Cabell County, West Virginia.

4.      Defendant Cabell County Board of Education (hereinafter referred to as "Defendant CCBOE") is a government agency that governs the public schools in Cabell County, West Virginia.

5.      Defendant CCBOE controls and maintains Huntington High School.

6.      Defendant Jonna Davis is and/or was an employee of Defendant CCBOE.

7.      Upon information and belief, Defendant Jonna Davis is a citizen and resident of Lawrence County, Ohio.

8.  Defendant Mickey Copley is and/or was an employee or agent of Defendant CCBOE.

9.  Upon information and belief, Defendant Mickey Copley is a citizen and resident of Cabell County, West Virginia.

10.  Defendant Tiffany Black is and/or was an employee or agent of Defendant CCBOE.

11.  Upon information and belief, Defendant Tiffany Black is a citizen and resident of Cabell County, West Virginia.

12.  Defendant Natalie Mastrangelo is and/or was an employee or agent of Defendant CCBOE.

13.  Upon information and belief, Defendant Natalie Mastrangelo is a citizen and resident of Cabell County, West Virginia.

14.  Defendant John Black is and/or was an employee or agent of Defendant CCBOE.

15.  Upon information and belief, Defendant John Black is a citizen and resident of Ohio.

## JURISDICTION AND VENUE

16.  Inasmuch as Plaintiffs assert that Defendants have violated federal law, this Court has original jurisdiction pursuant to 28 U.S.C. § 1131.

17.  This Court has supplemental jurisdiction over Plaintiffs' state law claims, because they are so related to federal claims that they form part of the same case or controversy under Article III of the United States Constitution. *See* 28 U.S.C. § 1367.

18.  Venue is appropriate in this Court because Defendants CCBOE, Mickey Copley, Tiffany Black, and Natalie Mastrangelo are residents of this district. *See* 28 U.S.C. § 1391(b)(1).

19.     Venue is also appropriate because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## FACTS

**C.M. is a minor child with special needs.**

20.     C.M. is a 15-year-old minor child who has been diagnosed with Phelan-McDermid Syndrome.

21.     Phelan-McDermid Syndrome is a rare genetic disorder that can lead to a number of physical and developmental issues and/or delays.

22.     As a result of his Phelan-McDermid Syndrome, C.M. has been diagnosed with autism, epilepsy, failure to thrive, pica,[1] and anxiety.

23.     C.M. also has a documented history of constipation, cellulitis, and rumination, a syndrome which causes him to regurgitate undigested or partially digested food.

24.     C.M. is non-verbal and requires assistance with activities of daily living.

25.     C.M. is allergic to strawberries and eggs and needs to have an EpiPen with him at all times.

26.     C.M. is on a high caloric diet and needs to consume a minimum of 2200 calories per day.

27.     C.M. requires constant supervision to ensure that he is not participating in unsafe behaviors including eating inedible items, eloping, or entering unsafe areas.

28.     Due to his documented medical needs and concerns, including a high risk of seizures and choking, C.M. needs to be within an arm's length of a responsible adult at all times.

29.     C.M. due to his medical conditions, C.M. has an unstable gait.

---

[1] Pica is a health condition that causes the sufferer to compulsively swallow non-food items.

30.     C.M. is not supposed to mobilize up and down stairs, and at school he is to use an assistive device, with adult assistance, to traverse the stairs.

31.     Due to his gait issues, C.M. should not be made to walk for long periods of time.

32.     C.M. follows a daily toileting schedule, whereby he is taken to the toilet every two hours.

33.     C.M. cannot express his need to toilet and cannot change himself if he has an accident.

34.     C.M. responds well to verbal and gestural prompts.

35.     Overuse of physical prompting is not effective for C.M.

36.     C.M. has a communication device which he can use, when prompted, to ask for food, drink, and other basic needs, including taking a break from work.

37.     C.M. has shown significant progress with his communication device.

38.     C.M. has a device at home and at school.

39.     For various reasons, including concerns surrounding COVID-19, C.M. received one-on-one instruction in an out-of-school environment beginning in September of 2020.

**C.M. begins attending Huntington High School in August 2022.**

40.     On or about March 7, 2022, C.M. had an Individualized Education Plan ("IEP") meeting at which his IEP team discussed transitioning C.M. back into the school environment at Huntington High School.

41.     On August 16, 2022, a follow up IEP team meeting was held to discuss C.M.'s transition to Huntington High School.

42.     Despite being on notice that C.M. would be starting school in August 2022, Defendant CCBOE failed to hire a full-time aide for C.M.

5

43.     At the August 16, 2022, IEP meeting, Defendant CCBOE by and through Special Education Supervisor Melody Levisay, proposed a "30-day temp aide until we can develop a supervision schedule, complete PT eval, and OT re evaluation."

44.     Upon information and belief, Defendant Tiffany Black was hired as the "30-day temp aide."

45.     C.M. also receives behavioral services from Diversified Assessment and Therapy Services ("Diversified").

46.     C.M.'s therapy with Diversified is supervised by a Board Certified Behavior Analyst ("BCBA").

47.     C.M.'s BCBA has a contract with Defendant CCBOE, and in addition to providing services to C.M. at home, the BCBA trains and occasionally supervises CCBOE staff on C.M.'s programming and behavioral needs.

48.     Starting on August 22, 2022, C.M. began attending school at Huntington High School from 7:30 a.m. to 3:15 p.m.

49.     Due to issues transitioning from home to a full day at school, C.M.'s IEP team held a meeting on August 25, 2022.

50.     On August 26, 2022, C.M. began attending school from 7:30 a.m. to 12:30 p.m., with hopes that he could later transition to a full day at school.

51.     C.M. was to attend four class modules or "mods" throughout the day.

52.     During his first mod, C.M. was to attend the class of special education teacher Defendant Jonna Davis.

53.     C.M.'s second and third mod classroom teacher was substitute teacher Defendant Mickey Copley.[2]

54.     After his third mod, C.M. was to be taken to lunch.

55.     C.M.'s fourth mod classroom teacher was Defendant Natalie Mastrangelo.

56.     After his fourth mod class, C.M. was to be picked up from school at 12:30 p.m.

57.     School staff and employees working with C.M., including the individual defendants, were to provide his parents with a communication log each day detailing C.M.'s day, including his behavior, activities, and toileting.

**C.M.'s parents start seeing red flags.**

58.     Shortly after C.M. began school, on August 31, 2022, it was reported that his school communication device was "broken."

59.     Although the device is simply an iPad with a Proloquo2go app, Defendant CCBOE failed to "repair" the device until September 14, 2022.

60.     After starting school at Huntington High School, C.M. started having more toileting accidents.

61.     After starting school at Huntington High School, Plaintiffs noticed that C.M. was coming home from school smelling like urine.

62.     On September 9, 2022, C.M.'s BCBA supervised C.M. at school.

63.     After supervising C.M., the BCBA conveyed to Plaintiff Teresa Mills that the BCBA did not believe that C.M. was being properly cleaned up by CCBOE employees after his toileting accidents.

---

[2] Upon information and belief, at all relevant times C.M.'s intended second and third mod teacher was out on medical leave.

64.     The BCBA informed Plaintiff Teresa Mills that the BCBA instructed Defendant Tiffany Black that in order to prevent accidents, she needed to assist C.M. with toileting, which may involve physically touching and cleaning him.

65.     Defendant Tiffany Black told the BCBA she was not comfortable with doing that.

66.     Finally, the BCBA noted that she thought Defendant Tiffany Black was allowing C.M. to eat with his fingers, because she does not like cleaning up when C.M. self-feeds using a spoon.

67.     On September 14, 2022 and September 15, 2022, Plaintiff Teresa Mills did not receive communication logs from the CCBOE employees and staff who had worked with C.M. at school, which raised concerns about C.M.'s treatment at school.

68.     On or about September 21, 2022, C.M.'s BCBA again went to observe C.M. at school.

69.     On or about September 21, 2022, the BCBA reported to Plaintiff Teresa Mills that C.M. was not in his classroom when she went to observe, and she had to look for him in the school.

70.     On or about September 21, 2022, the BCBA reported to Plaintiff Teresa Mills that she was concerned with the amount of time C.M. was spending outside the classroom.

71.     On September 22, 2022, an IEP meeting was held for C.M.

72.     At that September 22, 2022 IEP meeting, Defendant Tiffany Black cried and suggested that no teachers were working with C.M.

73.     At the September 22, 2022 IEP meeting, C.M's parent and advocate raised concerns that he was not receiving appropriate high calorie foods.

74.     Special Education Supervisor Ms. Levisay told C.M.'s IEP team that the school has been providing C.M. with a special tray at lunch since August 16, 2022.

75.     However, C.M. had not yet started school on August 16, 2022.

76.     At a later meeting, Plaintiff Teresa Mills asked whether C.M.'s classroom teacher knew that a special tray had been prepared for C.M., and the teacher responded in the negative.

77.     Upon information and belief, Defendant CCBOE employees were not providing C.M. with a tray of hot food at lunch, but rather were providing him only with finger foods.

78.     On September 23, 2022, C.M.'s school communication device was inadvertently sent home with him.

79.     A review of the device indicated that it had only been used sporadically and for short periods of time.

**Plaintiff Teresa Mills requests to view videos of her son at Huntington High School.**

80.     On September 26, 2022, Plaintiff Teresa Mills sent an email to CCBOE's Supervisor of Special Education Ms. Levisay and others citing concerns about her son's health and safety while attending Huntington High School and requested to view videos of his classes on September 14, 2022; September 15, 2022; and September 21, 2022.

81.     Approximately five minutes after Plaintiff Teresa Mills sent her email requesting to view the videos, Ms. Levisay replied and stated she had forwarded Plaintiff Teresa Mills' email to the principal and CCBOE's attorney.

82.     Although West Virginia law provides that parents requesting to view videos of self-contained classrooms be permitted to view them within seven days, Defendant CCBOE did not make the videos available until October 13, 2022, 17 days after Plaintiff Teresa Mills' first request.

83.     Plaintiff Teresa Mills was not able to view the videos on October 13, 2022, and Defendant CCBOE did not make them available again until October 19, 2022.

**Classroom videos show that C.M. was neglected, mistreated, and removed from his classroom by a CCBOE employee Plaintiffs had never heard of or met.**

84.     On October 19, 2022, Plaintiff Teresa Mills viewed videos of C.M. in class on September 14, 2022 and September 15, 2022.[3]

85.     The video of September 14, 2022 showed, *inter alia*:

a.   During his first mod class--

   i.   Defendant Jonna Davis appearing frustrated and roughly grabbing C.M.'s face to get his attention.

   ii.   C.M. leaving his first mod class after only 20 minutes.

b.   During his second mod class --

   i.   Defendants Mickey Copley and Tiffany Black barricading C.M. in the corner of the classroom with two desks and a chair.

   ii.   Defendants Mickey Copley and Tiffany Black repeatedly telling C.M. to sit when he tries to get out of the corner.

   iii.   Defendant Tiffany Black getting in C.M.'s face and telling him not to make her use her "mom voice."

   iv.   Defendant Tiffany Black leaving the room for approximately 16 minutes without telling anyone to supervise C.M.

---

[3] After she began watching the videos and saw the mistreatment of her child, Plaintiff Teresa Mills called her husband, Plaintiff Clinton Mills, who left work and arrived at the CCBOE office to watch the videos as well.

     v.   Defendants Mickey Copley and Tiffany Black watching C.M. having a bowel movement.

     vi.   Defendants Mickey Copley, Tiffany Black, and additional CCBOE employees laughing about C.M. having a bowel movement, spraying air freshener toward C.M.—without regard for his asthma— and taking another child out of the room because of the smell.

     vii.   Defendants Mickey Copley and Tiffany Black leaving C.M. in his feces for an extended period of time.

     viii.   Defendants Mickey Copley and Tiffany Black refusing to change C.M.'s diaper.

     ix.   Defendants Mickey Copley and Tiffany Black failing to provide C.M. with food or drink, despite his documented need for high caloric intake throughout the day.

     x.   C.M. walking around the classroom without his shoes.

     xi.   Defendants Mickey Copley and Tiffany Black depriving C.M. of his communication device, thereby preventing him from communicating any needs.

c.   During his third mod class --

     i.   Defendant Tiffany Black making popcorn and eating it in front of C.M. in a taunting manner, while denying him access to food.

     ii.   Defendant Mickey Copley making derogatory comments about Plaintiff Teresa Mills in front of C.M.

        iii.   Defendant Mickey Copley mocking C.M.'s communication device[4] and stating that she doesn't know why C.M. is at school.

    d.  During his Fourth mod class –

        i.   Defendant Tiffany Black leaves the room for nearly 17 minutes without telling anyone else or ensuring C.M. is cared for.

        ii.   C.M. being left with aides that are supposed to be with other students.

        iii.   Defendants Tiffany Black and Natalie Mastrangelo refusing to provide C.M. with food or water.

        iv.   C.M. being giving a phone and placed in a corner by Defendant Tiffany Black and Defendant Natalie Mastrangelo.

        v.   C.M. being removed from his classroom 15 minutes early.

        vi.   C.M. being denied access to his communication device.

86.      Although C.M. attends lunch in a self-contained room due to his special needs, Defendant CCBOE failed to place a camera in that room, denying his mother of her right to view his treatment during the lunch hour.

87.      In sum, instead of being treated with compassion and respect, on September 14, 2022, C.M. was mocked, grabbed, forced into a corner, left to sit in his urine and feces, and repeatedly told to sit all day, all while being denied his only means of communication.

88.      The Individual Defendants caring for C.M. knew he could not communicate his mistreatment to his parents.

---

[4] Including statements like "why can't they teach him sign language?"

89.     The video of September 15, 2022, showed *inter alia*:

   a.   During C.M.'s first mod class C.M.'s regular substitute aide, Defendant Tiffany Black, is not present.

   b.   The special education aide with C.M. is Defendant John Baker.

   c.   Defendant John Baker leaves the classroom with C.M. 25 minutes early.

   d.   C.M. does not appear again on camera in one of C.M.'s classrooms for approximately 2 hours and 46 minutes.

90.     Prior to viewing the video of September 14, 2022 on October 19, 2022, Plaintiffs Teresa Mills and Clinton Mills had never heard of Defendant John Baker.

91.     Plaintiffs were never informed that Defendant John Baker would be working with C.M.

92.     C.M.'s supervision schedule was provided to Plaintiffs prior to C.M. starting school in August 2022, and that schedule did not list Defendant John Baker as a person who would be working with C.M.[5]

93.     Plaintiffs have not been provided documentation showing that Defendant John Baker has been adequately trained on C.M.'s needs or the use of his assistive devices.

94.     Plaintiffs Teresa Mills and Clinton Mills have repeatedly asked to be provided with a description of and explanation for C.M.'s whereabouts during those 2 hours and 46 minutes on September 15, 2022, but have only been provided with video evidence suggesting that Defendant John Baker took C.M. to another teacher's classroom for approximately one hour. The remaining hour and 46 minutes are undocumented.

---

[5] Indeed, it is not until after the incidents where Defendant John Baker took C.M. from his classroom that he is listed on a supervisory schedule, and even then, the schedule states "John Baker or Jeff McFarland were with him previously when the assigned aide was absent."

95.     Despite the fact that C.M. did not show up to his second, third, or fourth mod classes, Plaintiffs Teresa and Clinton Mills did not receive a call from CCBOE stating that C.M. was absent.

96.     On November 17, 2022, Defendant CCBO provided an affidavit from Defendant John Baker stating "[a]t all times that day if [C.M.] was not in a classroom he was with me, on school property." Exhibit A.

97.     Defendant John Baker has also attested that he "remember[s] taking [C.M.] for a period of time out of the classroom to go to the baseball field to walk, to walk around the football field to throw a ball and to practice walking up and down the steps." *Id.*

98.     C.M. cannot throw or catch a ball.

99.     C.M. should not be practicing walking up and down steps, as he requires the use of the assistive device to traverse the stairs safely.

100.    C.M. should not be walking for long periods of time, as he has gate issues, tires easily, and requires frequent breaks.

101.    Among other things, affidavit does not explain why Defendant John Baker took C.M. from the classroom, why he took C.M. across the street to the ball fields, how C.M. was able to traverse the steps that must be taken to get to the baseball field, why he did not take C.M. to his scheduled classes, what Defendant John Baker and C.M. did for the entirety of their time together, and who gave him permission to do remove C.M. from his classroom and school building. *See id.*[6]

---

[6] Significantly, the affidavit also does not explain what Defendant John Baker did with C.M. on September 23, 2022, when he removed him from the classroom a second time. *See* ¶¶ 113–16, *infra*.

102.     To date Plaintiffs have not been provided with a reason why Defendant John Baker was permitted to take C.M. out of his classroom or out of the school building and onto the baseball or football field.

103.     In order to reach the baseball and/or football field at Huntington High School, Defendant John Baker would have to walk C.M. across the street.

104.     Plaintiffs have requested to view video footage displaying C.M.'s whereabouts and treatment while with Defendant John Baker on September 15, 2022, but have been denied access to hallway and exterior footage.

105.     Plaintiff Teresa Mills was informed that Huntington High School's Assistant Principal, Mr. Seals, had watched the hallway and exterior footage but was told she could not see them because they were "spotty at best."

106.     After viewing the videos on October 19, 2022, Plaintiff Teresa Mills sent an email to several CCBOE employees, including counsel, Ms. Hornbuckle-Myers stating:

> I am Formally requesting the district preserve all classroom and hallway
> videos that [C.M.] have been present in
> Starting on August 15, 2022 to date

107.     That same evening, Ms. Hornbuckle-Myers responded stating,

> Mr. Cunningham is on this email. We will preserve as far back as is
> allowable on the recording system.[7]

108.     On October 27, 2022, Plaintiff Teresa Mills viewed classroom footage from August 31, 2022; September 21, 2022; September 22, 2022.

109.     The video from August 31, 2022 showed, *inter alia*,

     a.   Defendant Jonna Davis again aggressively C.M.'s face out of frustration.

---

[7] This, obviously, is not compliance with a request to preserve.

      b.   Defendant Tiffany Black physically grabbing and shoving C.M. into a chair.

      c.   Defendant Tiffany Black physically restraining C.M. in his chair.

110.    The video from September 21, 2022, showed, *inter alia,* that C.M. was only in the classroom for 11 minutes of his first mod class.

111.    Much like the video from September 14, 2022, video from September 22, 2022, showed, *inter alia*,

      a.   Defendants Mickey Copley and Tiffany Black refusing to take C.M. to the restroom.

      b.   Defendants Mickey Copley and Tiffany Black barricading C.M. into the corner with desks and a chair.

      c.   Defendants Mickey Copley and Tiffany Black failing to prevent C.M. from placing objects in his mouth.

      d.   Defendants Mickey Copley and Tiffany Black laughing at and mocking C.M.'s disability.

      e.   Defendants Mickey Copley and Tiffany Black withholding C.M.'s communication device.

      f.   Defendants Mickey Copley and Tiffany Black ignoring C.M.

      g.   Defendants Mickey Copley and Tiffany Black allowing an unknown male aide to shove C.M. into a seated position.

      h.   Defendant Tiffany Black shoving C.M. to force him to sit.

      i.   Defendant Tiffany Black physically restraining C.M. in his chair.

      j.   Defendants Mickey Copley and Tiffany Black talking negatively about C.M., C.M.'s mother and the BCBA that works with him, including suggesting that the

money being spent on C.M.'s education and care was a waste and could be better spent elsewhere.

    k.   Defendants Mickey Copley, Tiffany Black, and Natalie Mastrangelo failing to ensure C.M. is taken to the restroom.

112.    On November 3, 2022, Plaintiff Teresa Mills viewed classroom footage from September 23, 2022.

113.    The video from September 23, 2022, showed that Defendant Tiffany Black was not present at school.

114.    On September 23, 2022, among other things,

    a.   C.M. was not provided with his communication device.

    b.   C.M. was denied the opportunity to use the restroom.

    c.   C.M. was denied food or drink.

    d.   C.M. was barricaded in the corner of the classroom with desks and a chair by Defendant John Baker and Defendant Mickey Copley.

    e.   CCBOE employees made disparaging comments about C.M.

    f.   Both Defendant Jonna Davis nor Defendant John Baker refused to change C.M.'s soiled diaper.

    g.   C.M. once again is taken from the classroom by Defendant John Baker for approximately 1 hour and 55 minutes.

115.    The communication log from September 23, 2022, was completed by "Jeff," not Defendant John Baker.

116.    The communication log from September 23, 2022, states that for physical exercise, C.M. used his Rifton bike, but the options "walk" and "catch ball" are not circled.

117.    After seeing her son abused and neglected by CCBOE staff and taken out of his classroom—and therefore out of the view of the statutorily required cameras that ensure his safety—Plaintiff Teresa Mills was emotionally distraught and was unable to watch additional videos.

118.    This emotional distress was further fueled by Defendant CCBOE's counsel, Ms. Hornbuckle-Myers, treating Plaintiff Teresa Mills with hostility.

119.    After providing the videos, which demonstrated clear neglect, abuse, and mistreatment of C.M., Ms. Hornbuckle-Myers coldly and loudly demanded to know "what more" Plaintiffs wanted from CCBOE.

120.    Plaintiff Teresa Mills asked to be provided with C.M.'s whereabouts during those 1 hour and 55 minutes on September 23, 2022, but to date has not been given an answer.

121.    It was not until on October 20, 2022, per Plaintiff Teresa Mills' specific request, that Defendant CCBOE filed a report with Child Protective Services.

122.    Upon information and belief, other children in C.M.'s classrooms are being similarly maltreated and neglected.

123.    Upon information and belief, the additional videos of C.M.'s classrooms from August 22, 2022 to October 19, 2022 — that his parents have not yet been able to view — show further maltreatment and neglect of C.M. and his classmates.

124.    Upon information and belief, Defendants Mickey Copley, Tiffany Black, and John Baker were briefly suspended by CCBOE.

125.    Upon information and belief, Defendant CCBOE has since reinstated Defendants Mickey Copley, Tiffany Black, and John Baker.

126.     Upon information and belief, Defendant Natalie Mastrangelo is being transferred from Huntington High School to Cabell Midland High School.

**Cabell County Board of Education refuses to show Plaintiffs the hallway and exterior videos from the dates C.M. was taken from the classroom.**

127.     Because employees of Defendant CCBOE and counsel for CCBOE viewed videos of C.M. being taken from his classroom with Plaintiffs on October 19, 2022 and October 27, 2022, Defendant CCBOE reasonably anticipated C.M.'s parents would file suit.

128.     This is especially true, given Plaintiff Teresa Mills' October 19, 2022 email formally requesting that Defendant CCBOE "preserve all classroom and hallway videos that [C.M.] have been present in Starting on August 15, 2022 to date[.]"

129.     Additionally, on November 8, 2022, counsel for the Plaintiffs sent a Litigation Hold Letter to the Cabell County Board of Education.

130.     That letter, among other things, requested that Defendant CCBO preserve and maintain any and all documents, videos, audio recordings, and photographs pertaining to:

> (1) The whereabouts, care, and education of [C.M.] throughout the school day from August 27, 2022 to the present, including but not limited to classroom, cafeteria, hallway, baseball field, and exterior video footage, regardless of quality.

131.     Being advised that Defendant CCBOE may have engaged Mr. David Rich as counsel, Plaintiffs' counsel sent a copy of the same Litigation Hold Notice to Mr. Rich via certified U.S. Mail on November 9, 2022.

132.     Thereafter, Plaintiffs' counsel made multiple requests to Defendant CCBOE's general and outside counsel to make the videos of C.M. available.

133.     Plaintiffs' counsel's first request went unanswered.

134.    On November 15, 2022, Plaintiffs' counsel sent a second letter, along with a signed FERPA release, asking Defendant CCBOE to provide certain portions of C.M.'s education record, including video footage of his treatment, education, and whereabouts, including hallway and exterior video footage, on August 31, 2022; September 14, 2022; September 15, 2022; September 21, 2022; September 22, 2022; and September 23, 2022.

135.    Ms. Hornbuckle-Myers responded with an email suggesting that "Principal Seals checked the hallway and exterior cameras in an attempt to confirm [C.M.]'s whereabouts during those times [he was taken from the classroom] and the cameras did not record sufficiently such that he could be pinpointed at all times."

136.    This email from Ms. Hornbuckle-Myers suggests that, at a minimum, C.M. could be pinpointed at *some* times on the hallway and exterior cameras.

137.    Plaintiffs' counsel once again, asked for these videos to be made available.

138.    On December 8, 2022, Plaintiff Teresa Mills, Plaintiffs' counsel, Ms. Hornbuckle-Myers, Mr. Rich, and Mr. Seals met, ostensibly to view the exterior and hall videos for the days Defendant John Baker removed C.M. from his classroom.

139.    At that meeting, counsel for Defendant CCBOE acknowledged that the Litigation Hold Notice and request for preservation of those videos had been received.

140.    At that meeting, Mrs. Hornbuckle-Myers, Mr. Rich, and Mr. Seals stated that in the "last few weeks," Defendant CCBOE had its camera systems replaced and that Defendant CCBOE is now "unable" to access the hallway and exterior footage from September 15, 2022 and September 23, 2022.

141.    After being advised that failure to maintain the videos may result in a claim for spoliation, Plaintiffs' counsel received an email from Ms. Hornbuckle-Myers on December 9,

2022, stating that Defendant CCBOE's IT was suddenly, and without explanation, able to "pull" the videos from the days C.M. was taken from his classroom.

142.    Despite affirmatively stating that the videos have now been pulled, Ms. Hornbuckle-Myers inexplicably posed that "the process is going to be slow to get cameras [sic] video" and that she will not be schedule a time for Plaintiffs to view the videos until they are "ready."

143.    Upon information and belief, the videos have been tampered with, destroyed, or no longer exist.

144.    Plaintiffs now reasonably believe that Defendant CCBOE has failed to preserve the rest of the videos, showing the mistreatment of C.M. and his classmates.

145.    As a result of all the foregoing, Plaintiffs have suffered severe emotional harm and distress.

## COUNT I – NEGLIGENCE
### (All Defendants)

146.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

147.    Defendant CCBOE and its employees, agents, and/or representatives, including each of the Individual Defendants, hold an in *loco parentis* relationship with C.M.

148.    By serving in *loco parentis,* Defendant CCBOE and its employees, agents, and/or representatives hold heightened responsibilities to its students – including students with special needs like C.M. – including a heightened fiduciary duty.

149.    One of the duties owed to C.M. — and all other students within the school district—is the duty to protect those entrusted to their care.

21

150.     Defendants voluntarily accepted the entrusted care of C.M. As such, Defendants owed C.M. a special, fiduciary duty of care, in addition to a duty of ordinary care, to ensure the safety of C.M. and protect him from harm.

151.     The Individual Defendants breached their duty(ies) of care by, among other things,

    a.      Depriving him of food and drinks;

    b.      Leaving him in his feces and urine;

    c.      Failing to take him to the restroom;

    d.      Failing to provide him with his communication device;

    e.      Failing to keep him within an arm's reach of an adult at all time;

    f.      Failing to keep him within the school building;

    g.      Failing to keep him in his designated classroom; and

    h.      Failing to maintain awareness of C.M.'s whereabouts throughout the school day.

152.     As a direct and proximate result of the Defendants' negligence, C.M. and his parents suffered damages, including emotional harm.

153.     As a direct and proximate result of the Defendants' negligence, C.M. will not be returning to Huntington High School for the rest of the academic year, depriving him of social interaction.

154.     Defendant CCBOE is liable for injury to C.M. caused by the negligent operation of Huntington High School, through their employees and agents, as they were acting within the course and scope of their employment.

155.    Defendant CCBOE is liable for injuries to C.M. caused by the negligent actions—or inactions—of its employees and agents while acting within the course and scope of their employment.

156.    As a direct and proximate result of the actions—or inactions—of CCBOE's employees and agents, C.M. suffered harm for which CCBOE is vicariously liable.

157.    Defendants' negligence has caused injury to C.M. and his parents, including threatened bodily harm to C.M., along with great mental and emotional distress, and loss of enjoyment of life.

158.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property caused by the negligent performance of acts by its employees while acting within the scope of employment.  *See* W. Va. Code § 29–12A–4(c)(2).

159.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property that is caused by the negligence of its employees and that occurs within or on the grounds of the buildings that are used by Defendant CCBOE. *See* W. Va. Code § 29–12A–4(c)(4).

## COUNT II – NEGLIGENCE PER SE
### (All Defendants)

160.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

161.     "Violation of a statute is *prima facie* evidence of negligence." Syl. pt. 1, *Anderson v. Moulder*, 394 S.E.2d 61 (W. Va. 1990).

162.    West Virginia Code § 49–2–803(a) provides that

[a]ny . . . school teacher or other school personnel . . . who has reasonable cause to suspect that a child is neglected or abused, including sexual abuse or sexual assault, or observes the child being subjected to conditions that are likely to result in abuse or neglect shall immediately, and not more than 24 hours after suspecting this abuse or neglect, report the circumstances to the Department of Health and Human Resources.

163.    Section 49–2–803(a) further provides that

[a]ny person required to report under this article who is a member of the staff or volunteer of a public or private institution, school, entity that provides organized activities for children, facility, or agency shall also immediately notify the person in charge of the institution, school, entity that provides organized activities for children, facility, or agency, or a designated agent thereof, who may supplement the report or cause an additional report to be made: Provided, That notifying a person in charge, supervisor, or superior does not exempt a person from his or her mandate to report suspected abuse or neglect.

164.    County boards of education are required to provide all employees with a written statement setting forth these requirements and are required to obtain a signed acknowledgement that school employees understand the reporting requirement.

165.    West Virginia's mandated reporting law requires school employees to report their own abuse and neglect. W. Va. Code § 49–2–803(c).

166.    The West Virginia Code defines a neglected child as a child "whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian." W. Va. Code § 49–1–201.

167.    Defendant CCBOE and its employees, while acting *in loco parentis* threatened C.M.'s physical or mental health by failing to supply him with adequate supervision.

168.     Defendant CCBOE and its employees, including the Individual Defendants, threatened C.M's physical or mental health by failing to ensure that he was physically safe while at school.

169.     The West Virginia Code defines an abused child as a child "whose health or welfare is harmed or threatened by . . . a parent, guardian, or custodian who knowingly or intentionally inflects, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment." W. Va. Code § 49–1–201.

170.     The Individual Defendants' treatment of C.M. constituted abuse or neglect under West Virginia law.

171.     C.M.'s health or welfare was harmed or threatened by the Individual Defendants' actual or attempted physical injury.

172.     Each of Defendant CCBOE's employees is a mandated reported under WV law.

173.     Each of the Individual Defendants had a duty to report their own abuse or neglect.

174.     Each of the Individual Defendants had a duty to report the abuse or neglect of others.

175.     Each of Individual Defendants violated West Virginia Code § 49–2–803(c),

176.     Each of the Individual Defendants failure to report caused C.M. to remain in his classroom, meaning he was subjected to further neglect and abuse.

177.     In addition to Individual Defendants, other CCBOE employees had reasonable cause to believe C.M. was being abused or neglected.

178.    Those CCBOE employees violated West Virginia Code § 49-2-803(c) by failing to report C.M.'s abuse or neglect.

179.    Those CCBOE employees' failures to report caused C.M. to remain in his classroom, prolonging C.M.'s exposure to neglect and abuse.

180.    West Virginia law requires Defendant CCBOE to ensure video cameras are placed in self-contained classrooms. W. Va. Code § 18-20-11(a).

181.    Section 18–20-11(j) provides that "[t]he school principal, other school administration designee, or county designee shall view no less than 15 minutes of the video of each self-contained classroom at the school no less than every 90 days. The state board shall include in its rule authorized by this section requirements for documentation of compliance with the video viewing requirements of this section."

182.    West Virginia law also states that "[i]f an incident is discovered while initially viewing camera footage that requires a report to be made under §49-2-803 of this code, that report shall be made by the viewer pursuant to that section within 24 hours of viewing the incident." W.Va. Code § 18-20-11(m).

183.    Pursuant to West Virginia Code § 18–20–11(k), the public school or school district is required to allow a parent of a student who is involved in an alleged incident to view recordings of the self-contained classroom *within seven days* of receiving a request.

184.    Defendant CCBOE and its agents, employees, and/or designees violated West Virginia Code § 18-20-11 by, *inter alia*,

      a.    Failing to install cameras in the self-contained classroom C.M. was provided lunch in;

      b.    Failing to review the videos of C.M.'s self-contained classrooms;

     c.      Failing to make the videos available within one week of Plaintiff Teresa

Mills' request; and

     d.      Failing to report suspected abuse or neglect within 24 hours of viewing the

videos.

185.    Defendant CCBOE's violation of W. Va. Code § 18-20-11 resulted in C.M. remaining in his classroom for *at least* an additional 10 days, causing him to suffer further neglect and abuse.

186.    Defendants' negligence has caused injury to C.M. and his parents, including threatened bodily harm to C.M., along with great mental and emotional distress, and loss of enjoyment of life.

187.    Defendant CCBOE is liable for injury to C.M. caused by the negligent operation of Huntington High School, through their employees and agents, as they were acting within the course and scope of their employment.

188.    Defendant CCBOE is liable for injuries to C.M. caused by the negligent actions— or inactions—of its employees and agents while acting within the course and scope of their employment.

189.    As a direct and proximate result of the actions—or inactions—of Defendant CCBOE's employees and agents, C.M. suffered harm for which CCBOE is vicariously liable.

190.    Defendant CCBOE does not have immunity from negligence per se claims arising from the violation of an established law or regulation. *See C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 770–72 (W. Va. 2021).

191.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property caused by the negligent performance of acts by its employees while acting within the scope of employment.  *See* W. Va. Code § 29–12A–4(c)(2).

192.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property that is caused by the negligence of its employees and that occurs within or on the grounds of the buildings that are used by Defendant CCBOE. *See* W. Va. Code § 29–12A–4(c)(4).

### COUNT III –NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(All Defendants)**

193.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

194.    In West Virginia, "[a]n individual may recover for the negligent infliction of emotional distress absent accompanying physical injury upon a showing of facts sufficient to guarantee that the emotional damages claim is not spurious." Syl. pt. 2, *Ricottilli v. Summersville Memorial Hospital*, 425 S.E.2d 629 (W. Va. 1992); *Marlin v. Bill Rich Const., Inc.*, 482 S.E.2d 620, 637 (W. Va. 1996).

195.    The negligent acts and omissions of the Defendants asserted herein directly and proximately caused serious emotional distress and injury to Plaintiffs Teresa Mills, Clinton Mills, and C.M.

196.    Plaintiffs' serious emotional distress was reasonably foreseeable.

197.    Plaintiffs' claim for emotional damages is not spurious, as a reasonable person in Plaintiffs' position would suffer from emotional distress.

198.    Defendants knew or should have known that their conduct, as described herein, would cause severe emotional distress, mental anguish, and pain and suffering to C.M. and his parents.

199.    Defendant CCBOE is liable for injury to C.M. caused by the negligent operation of Huntington High School, through their employees and agents, as they were acting within the course and scope of their employment.

200.    Defendant CCBOE is liable for injuries to C.M. caused by the negligent actions—or inactions—of its employees and agents while acting within the course and scope of their employment.

201.    As a direct and proximate result of the actions—or inactions—of Defendant CCBOE's employees and agents, C.M. suffered harm for which CCBOE is vicariously liable.

202.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property caused by the negligent performance of acts by its employees while acting within the scope of employment.  *See* W. Va. Code § 29–12A–4(c)(2).

203.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property that is caused by the negligence of its employees and that occurs within or on the grounds of the buildings that are used by Defendant CCBOE. *See* W. Va. Code § 29–12A–4(c)(4).

## COUNT IV –NEGLIGENT TRAINING AND SUPERVISION
### (Defendant CCBOE)

204.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

205.    As an educational institution for minors, where all of the students are entrusted in the care of Defendant CCBOE's agents, employees, and representatives, Defendant CCBOE

expressly and implicitly represented that its agents, employees, and representatives, including Defendants Jonna Davis, Mickey Copley, Tiffany Black, Natalie Mastrangelo, and John Baker, were not a risk to C.M. and other children with special needs who fell under Davis, Copley, Black, Mastrangelo and/or Baker's supervision or guidance.

206.    Defendant CCBOE had a duty to train its employees and school personnel on how child abuse and child neglect could be prevented. *See* W.Va. Code § 18-5-15c.

207.    Defendant CCBOE had sufficient funding and ability to establish and provide such training.

208.    Defendant CCBOE breached its duty to sufficiently train its employees and school personal in this regard, particularly relating to the proper care and treatment of special needs students.

209.    Defendant CCBOE had a duty to supervise its staff, including the Individual Defendants.

210.    This duty to supervise included a duty to monitor special needs classrooms and to take other reasonable measure to ensure special needs students were safe while attending Huntington High School.

211.    Defendant CCBOE failed to supervise, or at a minimum, failed to reasonably supervise Defendants Jonna Davis, Mickey Copley, Tiffany Black, Natalie Mastrangelo, and John Baker in their positions of trust and authority as teachers and/or special education aides, allowing them to commit negligent and wrongful acts against C.M.

212.    Despite knowledge of C.M.'s needs, Defendant CCBOE failed to take reasonable and appropriate action for C.M.'s safety.

213.    Defendant CCBOE knew or should have known that Defendants Jonna Davis, Mickey Copley, Tiffany Black, Natalie Mastrangelo, and John Baker were acting negligently toward C.M., because it had a duty to supervise its staff.

214.    Additionally, Defendant CCBOE had a statutory duty to review the footage of the self-contained classrooms C.M. was attending.

215.    Moreover, because Defendant CCBOE has security cameras, security guards, and a school resource officer(s), it should have known that Defendant John Baker was inappropriately taking C.M. out of the school building during school hours on September 15, 2022.

216.    As a direct and proximate result of the above-described conduct, Defendant John Baker was permitted to take C.M. out of the classroom at least one additional time on September 24, 2022.

217.    As a proximate and direct result of Defendant CCBOE's failure to supervise its employees, the Individual Defendants committed negligent acts toward C.M. and caused the Plaintiffs to suffer injury, including threatened bodily harm to C.M., along with great mental and emotional distress, and loss of enjoyment of life.

218.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property caused by the negligent performance of acts by its employees while acting within the scope of employment.  *See* W. Va. Code § 29–12A–4(c)(2).

219.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property that is caused by the negligence of its employees and that occurs within or on the grounds of the buildings that are used by Defendant CCBOE. *See* W. Va. Code § 29–12A–4(c)(4).

## COUNT V- NEGLIGENT HIRING/RETENTION
### (Defendant CCBOE)

220.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

221.    Defendant CCBOE owed C.M. and his parents a duty to not to hire or retain employees who are unqualified to care for children with special needs.

222.    Defendant CCBOE knew or reasonably should have known had it conducted a reasonable investigation into the Individual Defendants' backgrounds prior to their initial employment and/or prior to renewing their contracts with CCBOE.

223.    As an educational institution and operator of a school, where most or all of the students are minors entrusted to the school and its employees, Defendant CCBOE expressly and implicitly represented that its teachers, aides, and agents, including the Individual Defendants, were not a threat to children and others who fell under their control, direction, supervision, and guidance.

224.    Defendant CCBOE should have been able to reasonably foresee the possible risk of harm or injury to students that could result from the conduct of Individual Defendants.

225.    Defendant CCBOE breached its duty to the Plaintiffs when it hired the Individual Defendants without first conducting a reasonable investigation into their prior education, employment, and criminal histories.

226.    Defendant CCBOE breached its duty by retaining the Individual Defendants, despite knowledge their negligent and neglectful conduct.

227.    As a direct and proximate result of Defendant CCOBE's negligent hiring and retention, the Individual Defendants committed the aforementioned negligent acts and caused

C.M and his parents to suffer injury, including threatened bodily harm to C.M., along with great mental and emotional distress, and loss of enjoyment of life.

228.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property caused by the negligent performance of acts by its employees while acting within the scope of employment.  *See* W. Va. Code § 29–12A–4(c)(2).

229.    Defendant CCBOE does not have immunity for injury, death, or loss to persons or property that is caused by the negligence of its employees and that occurs within or on the grounds of the buildings that are used by Defendant CCBOE. *See* W. Va. Code § 29–12A–4(c)(4).

## COUNT VI- DISABILITY DISCRIMINATION IN VIOLTION OF THE WEST VIRGINIA HUMAN RIGHTS ACT
### (All Defendants)

230.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

231.    The West Virginia Human Rights Act, West Virginia Code § 5–11–1, *et seq.* prohibits discrimination on the basis of an individual's disability.

232.    Specifically, Under the WVHRA, it is unlawful for "any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to ... [r]efuse, withhold from or deny to any individual because of his or her ... disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges, or services of the place of public accommodations." W. Va. Code § 5-11-9(6)(A).

233.    Public schools are a "place of public accommodation." *See* W. Va. Code § 5-11-3(j).

234.    C.M. is an individual with a disability under the WVHRA. *See* W. Va. Code § 5-11-3(m).

235.    C.M.'s disability substantially limits several major life activities. *See id.*

236.    Among other things, C.M. is non-verbal, is not toilet trained, and requires adult support for all daily living tasks.

237.    The Defendants in this case took advantage of, neglected, and belittled C.M. because of his disability.

238.    The Defendants knew, because of his disability, C.M. could not communicate with his parents about the neglect and mistreatment he suffered.

239.    But for his disability, the Defendants would not have neglected or belittled C.M.

240.    But for his disability, the Defendants would not have barricaded him in a corner.

241.    As a result of the Defendants' actions, C.M. was denied advantages and privileges of CCBOE's place of public accommodation.

242.    As a result of this discrimination, Plaintiffs and C.M. suffered damages.

243.    Defendant CCBOE tolerated, permitted, and/or ratified the unlawful and discriminatory actions of the Individual Defendants.

244.    The Defendants' actions were willful and malicious and violated the West Virginia Human Rights Act, entitling the Plaintiffs to compensatory damages and attorneys fees and costs pursuant to West Virginia Code § 5-11-13.

245.    Defendant CCBOE and its employees are not immune from suit for claims under the WVHRA. *See Doe v. Cabell Cnty. Bd. of Educ.*, No. CR 3:21-0031, 2022 WL 568342, at *5 (S.D.W. Va. Feb. 24, 2022).

**COUNT VII- DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DIABILITIES ACT – Intentional Discrimination**
**(Defendant CCBOE)**

246.   Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

247.   Title II of the Americans with Disabilities Act ("ADA") prohibits public entities, including public schools, from discriminating against students on the basis of their disabilities.

248.   To state a claim under the ADA a plaintiff "must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

249.   Defendant CCBOE is a public entity under the ADA. *See* 42 USC § 12131(1).

250.   C.M. is a "qualified individual with a disability" under the ADA.  *See* 42 USC § 12131(2).

251.   C.M.'s disability substantially limits several major life activities.

252.   As a minor child living in Cabell County, he is otherwise qualified to receive the benefits of Defendant CCBOE's services, programs, and activities.

253.   C.M. was discriminated against because of his disability.

254.   The Defendants knew, because of his disability, C.M. could not communicate with his parents about the neglect and mistreatment he suffered.

255.   But for his disability, the Defendants would not have neglected or belittled C.M.

256.   But for his disability, the Defendants would not have barricaded him in a corner.

257.    As a result of the Defendants' actions, C.M. was denied advantages and privileges of CCBOE's place of public accommodation.

258.    As a result of this discrimination, Plaintiffs and C.M. suffered damages.

## COUNT VIII - VIOLATION OF THE REHAB ACT
### (Defendant CCBOE)

259.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

260.    Section 504 of the Rehabilitation Act prohibits discrimination against qualified individuals with disabilities. *See* 29 U.S.C. § 794.

261.    Defendant CCBOE is a recipient of federal financial assistance, and therefore is subject to the provisions of Section 504. *See id.*

262.    C.M. is an "otherwise qualified individual with a disability" within the meaning of Section 504. *See* 29 U.S.C. §§ 794, 705(20).

263.    C.M.'s disability substantially limits one or more major life activities.

264.    As a minor child living in Cabell County, he is qualified to participate in CCBOE's educational programs, activities, and services.

265.    C.M. was discriminated against because of his disability.

266.    The Defendants knew, because of his disability, C.M. could not communicate with his parents about the neglect and mistreatment he suffered.

267.    But for his disability, the Defendants would not have neglected or belittled C.M.

268.    But for his disability, the Defendants would not have barricaded him in a corner.

269.    As a result of the Defendants' actions, C.M. was denied advantages and privileges of CCBOE's place of public accommodation.

270.    As a result of this discrimination, Plaintiffs and C.M. suffered damages.

## COUNT IX- DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DIABILITIES ACT - Failure to Make Reasonable Accommodations
### (Defendant CCBOE)

271.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

272.    Title II of the Americans with Disabilities Act ("ADA") prohibits public entities, including public schools, form discriminating against students on the basis of their disabilities. 42 U.S.C. § 12321, *et seq.*

273.    Federal regulations state that public entities must provide reasonable accommodations to disabled individuals by "tak[ing] appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R § 35.160(a)(1).

274.    28 C.F.R. § 35.160(b)(1) requires public entities to "furnish appropriate auxiliary aids … where necessary to afford individuals with disabilities[] … an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."

275.    Defendant CCBOE is a public entity under the ADA. *See* 42 USC § 12131(1).

276.    Defendant CCBOE failed to reasonably accommodate C.M. with a communication device from August 31, 2022 to September 14, 2022.

277.    Defendant CCBOE further failed to reasonably accommodate C.M. with a communication device when its employees or agents withheld the device from C.M., depriving him of his only means of communication and preventing him from communicating his needs.

278.    Additionally, Defendant CCBOE failed to reasonably accommodate C.M.'s need for high caloric diet.

279.    Defendant CCBOE also failed to reasonably accommodate C.M. by refusing to assist him eating with utensils, thereby limiting his consumption to finger foods.

280.    Defendant CCBOE knew of C.M.'s disability.

281.    C.M.'s parent requested that CCBOE make reasonable accommodations by providing him with an assistive communication device and a high calorie diet.

282.    Defendant CCBOE could have easily complied with C.M.'s parents' reasonable accommodation requests.

283.    As a result of Defendant CCBOE's failure to provide reasonable accommodations, C.M. suffered injury, including a deprivation of an equal opportunity to participate in and enjoy the benefits of Defendant CCBOE's educational service, program, or activities.

## COUNT X- CIVIL BATTERY
### (Defendant Tiffany Black)

284.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

285.    Defendant Tiffany Black intentionally touched C.M. in a harmful or offensive manner, without his consent or the consent of his parents.

286.    Specifically, on at least one occasion, Defendant Tiffany Black physically pushed and/or restrained C.M. in his chair.

287.    C.M. and his parents suffered damages as a direct and proximate result of Defendant Tiffany Black's civil battery.

288.    Defendant Tiffany Black acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

## COUNT XI – CIVIL ASSAULT
### (Defendant Tiffany Black)

289.     Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

290.     Defendant Tiffany Black intentionally attempted or threated to inflict injury on C.M. when she attempted to physically push and/or restrain C.M.

291.     Defendant Tiffany Black had an apparent ability to cause the harm.

292.     Defendant Tiffany Black's misconduct caused and created a reasonable apprehension of bodily harm or offensive contact in C.M.

293.     C.M. and his parents suffered damages as a direct and proximate result of Defendant Tiffany Black's civil assault.

294.     Defendant Tiffany Black acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

## COUNT XII- CIVIL BATTERY
### (Defendant Jonna Davis)

295.     Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

296.     Defendant Jonna Davis intentionally touched C.M. in a harmful or offensive manner, without his consent or the consent of his parents.

297.     Specifically, on more than one occasion, Defendant Jonna Davis repeatedly grabbed C.M.'s face in a harmful or offensive manner.

298.     C.M. and his parents suffered damages as a direct and proximate result of Defendant Jonna Davis' civil battery.

299.    Defendant Jonna Davis acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

### COUNT XIII – CIVIL ASSAULT
**(Defendant Jonna Davis)**

300.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

301.    Defendant Jonna Davis intentionally attempted or threated to inflict injury on C.M. when she attempted grab his face.

302.    Defendant Jonna Davis had an apparent ability to cause the harm.

303.    Defendant Jonna Davis' misconduct caused and created a reasonable apprehension of bodily harm or offensive contact in C.M.

304.    C.M. and his parents suffered damages as a direct and proximate result of Defendant Jonna Davis' civil assault.

305.    Defendant Jonna Davis acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

### COUNT XIV- CIVIL BATTERY
**(Defendant John Baker)**

306.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

307.    Defendant John Baker intentionally touched C.M. in a harmful or offensive manner, without his consent or the consent of his parents.

308.    Upon information and belief, this harmful or offensive touching occurred when Defendant John Davis removed C.M. from his classroom and took him away from the video cameras that were installed to ensure C.M.'s safety.

309.    C.M. and his parents suffered damages as a direct and proximate result of Defendant John Baker's civil battery.

310.    Defendant John Baker acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

## COUNT XV – CIVIL ASSAULT
### (Defendant John Baker)

311.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

312.    Defendant John Baker intentionally attempted or threated to inflict injury on C.M.

313.    Defendant John Baker had an apparent ability to cause the harm.

314.    Defendant John Baker's misconduct caused and created a reasonable apprehension of bodily harm or offensive contact in C.M.

315.    C.M. and his parents suffered damages as a direct and proximate result of Defendant John Baker's civil assault.

316.    Defendant John Baker acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

## COUNT XVI – FALSE IMPRISONMENT
### (Defendants Tiffany Black, Mickey Copley, Jonna Davis, and John Baker)

317.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

318.    "To bring a false imprisonment claim in West Virginia, a plaintiff must show '(1) the detention of the person, and (2) the unlawfulness of the detention and restraint.'" *Earle v. City of Huntington*, No. CV 3:14-29536, 2016 WL 3198396 (S.D.W. Va. June 8, 2016) (quoting *Riffe v. Armstrong*, 477 S.E.2d 535, 552 (W. Va. 1996)).

319.     On multiple occasions, Defendants Tiffany Black, Mickey Copley, Jonna Davis, and John Baker detained and retrained C.M. by, *inter alia*, barricading him in a corner of the classroom with furniture and/or physically retraining him in his chair.

320.     These detentions and restraints were unlawful.

321.     C.M. and his parents suffered damages as a direct and proximate result of Defendant Tiffany Black, Mickey Copley, Jonna Davis, and John Baker's false imprisonment of C.M.

322.     Defendant Tiffany Black, Mickey Copley, Jonna Davis, and John Baker acted with malicious purpose, in bad faith, and in a wanton or reckless manner.

## COUNT XVII – TORT OF OUTRAGE
### (Individual Defendants)

323.     Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

324.     The Individual Defendants' intentional actions, as alleged herein, were of such an atrocious, extreme, and outrageous nature as to exceed all bounds of decency and to shock the conscience.

325.     The Individual Defendants acted with the intent to inflict emotional distress or acted recklessly when it was substantially certain emotional distress would result from their conduct.

326.     As a direct and proximate result of the Individual Defendants' actions Plaintiffs and C.M. have suffered emotional distress.

327.     The emotional distress suffered by the Plaintiffs and C.M. is so severe that no reasonable person would or could be expected to endure it.

## COUNT XVIII – VIOLATION OF 42 U.S.C. § 1983
**(All Defendants)**

328.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

329.    The actions of the Defendants violated C.M.'s constitutional rights, as guaranteed under the Fourteenth Amendment to the United States Constitution.

330.    The Individual Defendants are state actors acting under color of state law.

331.    Defendant CCBOE follows and at all relevant times maintained a custom, policy, and/or practice that caused injury to Plaintiffs and C.M. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976).

332.    The failure of Defendant CCBOE's administrators to adequately train and supervise teachers and aides caring for special needs students represents a custom of deliberate indifference.

333.    There have been multiple instances in recent years whereby Defendant CCBOE's personnel have behaved inappropriately and whereby CCBOE has allowed its employees to put other students, particularly students with special needs, at risk.

334.    It is not just C.M. that is being mistreated by Defendant CCBOE — other special needs students attending Huntington High School are being mistreated because of their disabilities.

335.    Other lawsuits have been filed alleging that Defendant CCBOE has failed to keep its special needs students safe. *See, e.g.*, *Doe v. Cabell Cnty. Bd. of Educ.*, No. CR 3:21-0031.

336.    Defendant CCBOE's personnel witnessed the mistreatment of C.M. and his classmates and allowed it to continue for days or weeks.

337.    Defendant CCBOE's administrators witnessed the mistreatment of C.M. and his classmates and allowed his maltreaters to continue working with him and other special needs students.

338.    As a direct result of the Defendants' misconduct and clearly-established constitutional violations, Plaintiffs and C.M. suffered damages.

## COUNT XIX – INTENTIONAL SPOLIATION
### (Defendant CCBOE)

339.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

340.    "It is a fundamental principle of law that a party who reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." *Tracy v. Cottrell*, 524 S.E.2d 879, 887 (W. Va. 1999).

341.    West Virginia has recognized that "intentional spoliation of evidence is misconduct of such a serious nature, the existing remedies are not a sufficient response." *Hannah v. Heeter*, 584 S.E.2d 560, 571 (W. Va. 2003).

342.    "[T]he tort of intentional spoliation of evidence consists of the following elements: (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages. Once the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation. The spoliator must overcome the rebuttable presumption or else be liable for damages." *Id.*

343.     Defendant CCBOE was aware of the potential civil action as soon as its employees, agents, and/or attorneys reviewed the footage of C.M. in his classroom and saw Defendant John Baker remove C.M. for an extended period of time.

344.     On October 19, 2022, Plaintiff Teresa Mills explicitly requested that all classroom and hallway videos be preserved.

345.     Defendant CCBOE was further advised by Plaintiffs' counsel to preserve videos of not only the classrooms, but also the hallway and exterior videos.

346.     Employees and agents of Defendant CCBOE have admitted that the hallway and exterior videos existed.

347.     Despite its awareness of potential civil action, Defendant CCBOE has willfully destroyed the videos of the hallway and exterior videos.

348.     The hallway and exterior videos are vital to proving Plaintiffs' claims against Defendant John Baker.

349.     Defendant CCBOE willfully destroyed the hallway and exterior videos to defeat Plaintiffs' claims against Defendant John Baker.

350.     The spoliated evidence was vital to Plaintiffs' civil battery and civil assault claims against Defendant John Baker.

351.     Defendant CCBOE's actions have caused Plaintiffs to suffer damages, including additional emotional distress.

352.     Plaintiffs seek punitive damages for Defendant CCBOE's intentional spoliation.

## COUNT XX – NEGLIGENT SPOLIATION
### (Defendant CCBOE)

353.    Plaintiffs re-allege and incorporate by reference each and every allegation contained above as though fully set forth and brought in this cause of action.

354.    "It is a fundamental principle of law that a party who reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." *Tracy v. Cottrell*, 524 S.E.2d 879, 887 (W. Va. 1999).

355.    "West Virginia recognizes spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a third party, and the third party had a special duty to preserve the evidence." *Hannah v. Heeter*, 584 S.E.2d 560, 568 (W. Va. 2003).

356.    Here, Defendant CCBOE is a third party to Plaintiffs' claim against Defendant John Baker.

357.    Defendant CCBOD had actual knowledge of the potential civil action

358.    Defendant CCBOE had a special duty to preserve the evidence.

359.    Defendant CCBOE is the employer of Defendant John Baker and it was told to preserve the videos by Plaintiff Teresa Mills, and by Plaintiffs' counsel.

360.    On October 19, 2022, after Plaintiff Teresa Mills explicitly requested that all classroom and hallway videos be preserved, counsel for Defendant CCBOE Ms. Hornbuckle-Myers voluntarily assumed the duty to preserve the hallway videos.

361.    Defendant CCBOE's employees or agents have admitted that the hallway and exterior videos existed.

362.    Defendant CCBOE spoliated the videos.

363.    The spoliated evidence was vital to Plaintiffs' civil battery and civil assault claims against Defendant John Baker.

364.    Plaintiffs have suffered damages as a result of Defendant CCBOE's spoliation, including additional emotional distress.

****

WHEREFORE, Teresa and Clinton Mills, as the parents, guardians and next friend of minor, C.M., demand judgment against the Defendants Cabell County Board of Education, Jonna Davis, Mickey Copley, Tiffany Black, Natalie Mastrangelo, and John Baker in an amount to fully and fairly compensate the Plaintiffs for damages, including, but not limited to, court costs, attorney fees, economic damages, non-economic damages, pre- and post-judgment interest as provided by law, and any other relief that this Court deems just under the circumstances.

Plaintiffs further demands punitive damages, as Defendants Cabell County Board of Education, Jonna Davis, Mickey Copley, Tiffany Black, Natalie Mastrangelo, and John Baker acted with actual malice toward C.M. or with a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others.

Finally, Plaintiffs demand injunctive relief, requiring Defendant CCBOE to correct their policy and practice of violating the civil rights of students with disabilities.

**Plaintiffs demand a trial by jury.**

Dated: December 19, 2022

**Teresa and Clinton Mills, individually and as the parents and guardians of C.M.,**

**By Counsel**,

/s/ Casey Waldeck

Ryan M. Donovan (WVSB # 11660)
Casey E. Waldeck (WVSB #14001)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
681-265-3802 *office*
rdonovan@hfdrlaw.com
cwaldeck@hfdrlaw.com