IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**TERESA MILLS and CLINTON MILLS**,
**individually and as parents and guardians**
**of C.M.,**

      **Plaintiffs,**

v.                                                    **Case No.:  3:22-cv-00592**

**CABELL COUNTY BOARD OF EDUCATION**,
**JONNA DAVIS, MICKEY COPLEY,**
**TIFFANY BLACK, NATALIE MASTRANGELO,**
**and JOHN BAKER,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Cabell County Board of Education's motions to compel discovery responses from Plaintiffs, (ECF Nos. 40, 41, 42), and Plaintiffs' motion to compel discovery responses from the Cabell County Board of Education, (ECF No. 48). For the following reasons, the Court **GRANTS, in part,** and **DENIES, in part,** Defendant's motion to compel discovery responses from C.M., by and through his parents, Plaintiffs Teresa and Clinton Mills, (ECF No. 40); **DENIES** Defendant's motions to compel discovery responses from Plaintiffs Teresa and Clinton Mills, (ECF Nos. 41, 42); and **GRANTS** Plaintiffs' motion to compel discovery responses from the Cabell County Board of Education, (ECF No. 48). The Court finds that the parties shall bear their own costs associated with the motions.

## I.     Relevant Facts and Procedural History

Plaintiffs Teresa and Clinton Mills are the parents of C.M., a 15-year-old former student at Huntington High School ("HHS"), which is governed by the Cabell County Board of Education ("CCBOE").[1] (ECF No. 1 at 2, 6). As a result of Phelan-McDermid Syndrome, C.M. is non-verbal and requires assistance with daily activities, including being taken to the restroom, traversing stairs, and other functions. (*Id.* at 4-5). He uses an electronic device, when prompted, to request food, drink, or other basic needs. (*Id.* at 5).

C.M. attended HHS from August 22, 2022 through October 19, 2022. (*Id.* at 6, 18). He attended full school days (7:15 a.m. to 3:15 p.m.) for the first few days, but he began a limited schedule (7:15 a.m. to 12:30 p.m.) on August 26, 2022 because he experienced issues transitioning. (*Id.* at 6). C.M. was placed in the care of school aides, Tiffany Black and John Baker; special education teachers, Jonna Davis and Natalie Mastrangelo; and substitute teacher, Mickey Copley.  (*Id.* at 6-7, 13). School staff was supposed to provide C.M.'s parents with daily communication logs that detailed C.M.'s behavior, activities, and toileting. (*Id.* at 7). In addition, C.M. received behavioral services therapy from Diversified Assessment and Therapy Services ("Diversified") which was supervised by a Board Certified Behavior Analyst ("BCBA"). (*Id.* at 6). The BCBA trained and occasionally supervised CCBOE staff on C.M.'s programming and behavioral needs. (*Id.*).

Plaintiffs allege that they very quickly noticed "red flags" after C.M. began school at HHS, including the CCBOE failing to timely repair C.M.'s school communication

---

[1] The factual allegations are summarized from Plaintiffs' Complaint.

device (an iPad with a Proloquo2go app); C.M. having increased toileting accidents; and C.M. coming home from school smelling like urine. (*Id.* at 7). The BCBA observed C.M. at school on September 9, 2022 and reported to Plaintiff Teresa Mills that C.M. was not being properly cleaned after toileting accidents and was eating with his fingers. (*Id.* at 7-8). When the BCBA went to observe C.M. again on September 21, 2022, C.M. was not in his classroom. (*Id.* at 8). Plaintiff Teresa Mills had additional concerns that she did not receive communication logs from the school on September 14 or 15, 2022; that C.M. was not receiving the high calorie foods that he required; and that his communication device had only been used sporadically for short periods of time. (*Id.* at 8-9).

In October 2022, Plaintiffs viewed certain videos of their son's class recorded in August and September 2022. (*Id.* at 9-12, 15-17). They observed one or more of the Defendants, *inter alia*, grabbing C.M.'s face in frustration; shoving him into a chair; restraining him; barricading him in the corner of the classroom; deriding him; refusing to change his soiled diaper; ignoring him; leaving him unattended without an aide; and depriving him of his communication device, food, and drink. (*Id.* at 10-12, 15-17). In a video taken on September 15, 2022, Defendant Baker took C.M. from his classroom for two hours and 45 minutes—one hour of which was spent in another classroom—and the remainder of the time was undocumented. (*Id.* at 13).

Plaintiffs believe that additional videos of C.M.'s classrooms taken through October 19, 2022 show further mistreatment and neglect of C.M. and his classmates. (*Id.* at 18).[2] On October 19, 2022, Plaintiff requested that the CCBOE preserve all classroom and hallway videos of C.M. recorded on or after August 15, 2022. (*Id.* at 19). The

___

[2] Plaintiffs clarify in a pending motion that C.M. was withdrawn from school on October 20, 2022. (ECF No. 48 at 7).

following day, the CCBOE filed a report with Child Protective Services ("CPS") upon Plaintiff's insistence. (*Id.* at 18). Defendants Copley, Black, and Baker were briefly suspended and reinstated. (*Id.*). On November 8, 2022, Plaintiffs' counsel sent a formal litigation hold letter, requesting that the CCBOE preserve any documents, videos, audio recordings, and photographs pertaining to the whereabouts, care, and education of C.M. prepared on or after August 27, 2022. (*Id.* at 19). Plaintiffs' counsel also requested access to videos of C.M. (*Id.* at 19-20). The CCBOE's general counsel responded that certain footage was inaccessible because the camera system was replaced, but she later advised that the requested footage was "pull[ed]," and Plaintiffs could view it when it was "ready." (*Id.* at 20-21).

On December 19, 2022, Plaintiffs filed the instant lawsuit, asserting twenty claims. Plaintiffs contend that (1) all defendants are liable for negligence, negligence per se, negligent infliction of emotional distress, disability discrimination under the West Virginia Human Rights Act, and violation of 42 U.S.C. § 1983; (2) the CCBOE is also liable for negligent training and supervision, negligent hiring/retention, disability discrimination under the Americans with Disabilities Act, violation of the federal Rehabilitation Act, and intentional and negligent spoliation; (3) Black, Davis, and Baker committed civil battery and assault; (4) Black, Davis, Baker, and Copley falsely imprisoned C.M.; and (5) all individual defendants are liable for the tort of outrage. (*Id.* at 21-47). Plaintiffs allege that they suffered injuries, including mental and emotional distress, reasonable apprehension of bodily harm to C.M., and loss of enjoyment of life. (*Id.* at 22, 27, 28, 31, 33, 39, 40, 41, 42, 45, 47). They seek monetary damages and injunctive relief. (*Id.* at 47).

4

## II.    Discussion

The parties collectively filed four pending motions to compel discovery responses. The issues that have not been resolved per the parties' reply briefs are addressed by the Court. The scope of discovery that is permissible in this action is defined in Rule 26(b)(1) of the Federal Rules of Civil Procedure, which states:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). Yet, even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). Under the local rules of this Court, a motion to compel must be filed within 30 days of the discovery responses being due, or the motion is waived. L. R. Civ. P. 371(c). However, the 30-day deadline may be extended by Court order for good cause shown or by stipulation of the parties, so long as the extension does not interfere with the scheduling order. *Id.*

In the event of a discovery dispute, the party resisting discovery, not the party

seeking discovery, bears the burden of persuasion. *Tinsley v. OneWest Bank, FSB*, No. 3:13-CV-23241, 2014 WL 7005852, at *2 (S.D.W. Va. Dec. 10, 2014) (citations omitted). Conclusory and unsubstantiated allegations are insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

### A. CCBOE's Motion to Compel Responses Regarding C.M.

The CCBOE seeks an order compelling Plaintiffs Teresa and Clinton Mills, as parents and guardians of C.M., to provide full and complete discovery responses. (ECF No. 40). For the following reasons, the Court grants the motion concerning some of the discovery requests, but denies the motion regarding the remaining requests.

#### 1. Interrogatory No. 3

The CCBOE asks Plaintiffs to describe the factual basis for their claim that the CCBOE negligently hired/retained the individual Defendants. (ECF No. 57 at 2). Plaintiffs objected to the request on the ground that it constitutes a contention interrogatory, which they are unable to fully and properly answer at this stage of the discovery process. (*Id.*). Without waiving the objection, they stated: "C.M.'s parents observed hours of footage which indicated that the Individual Defendants were obviously not properly qualified or trained to work with children with severe disabilities like C.M." (*Id.*). Plaintiffs argue that they have adequately answered the interrogatory at this time, indicating that the factual basis for their contention is their own observations of the individual defendants' conduct. (ECF No. 54 at 9). They note that they will supplement the response as discovery progresses. (*Id.*).

Contention interrogatories involve "an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). They have been defined as

interrogatories that request a litigant to state what it contends; to state whether it makes a specified contention; to state all facts upon which it bases a contention; to take a position and explain or defend that position; or to state the legal or theoretical basis for a contention. *Pauley v. CNE Poured Walls, Inc.*, No. 3:18-CV-01508, 2019 WL 3226996, at *1 (S.D.W. Va. July 17, 2019) (markings and citations omitted). This discovery device is "considered useful to help pin down an opponent's legal theories in a case as well as the primary facts supporting them." *Id.* (quoting *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 652 (D. Md. 1997)).

Most courts agree that contention interrogatories are most appropriately used after a substantial amount of discovery has been conducted, which is typically at the end of the discovery period. *Id.* (citing *Capacchione v. Charlotte–Mecklenburg Board of Education*, 182 F.R.D. 486, 489 (W.D.N.C. 1998)). However, to the extent that the party can respond to contention interrogatories based on currently available information, it should do so. *Id.* at *2. The party's response does not conclusively bind the party in all instances, and courts recognize that answers to contention interrogatories may evolve as discovery progresses and more information becomes available. *Id.*

In this case, Interrogatory No. 3 is clearly a contention interrogatory because it asks Plaintiffs to state the facts upon which they base their contention that the CCBOE negligently hired or retained the individual defendants. Plaintiffs responded that the contention is based on video footage that they viewed. However, their response is not sufficiently specific or detailed. They do not identify or describe the video footage that formed the factual basis for their negligent hiring/retention claim, such as the date of the video, who appeared in the video, and what it depicted. The fact that this is a contention interrogatory does not absolve Plaintiffs of their duty to provide the

7

responsive information that is currently available to them. Plaintiffs evidently viewed "something" that informed their claim that the CCBOE is liable for negligent hiring/retention, but they do not provide any insight into what it was, or which videos depicted it. The Court **GRANTS** the motion to compel concerning this interrogatory and **ORDERS** Plaintiffs to supplement their response with the responsive information currently known to them within **fourteen (14) days**.

### 2.  Interrogatory No. 8

The CCBOE requests specific details (date, time, classroom, and perpetrator) of each alleged act of abuse and/or neglect of C.M.'s classmates and what evidence Plaintiffs have in their possession of those allegations. (ECF No. 57 at 4). Plaintiffs objected on the basis that this is a contention interrogatory that cannot be fully answered at this point, but they identified that Plaintiff Teresa Mills observed C.M. and his classmates being mistreated on August 31 and September 14, 15, 22, and 23, 2022. (*Id.*). Plaintiffs listed the people who can testify regarding the contents of the videos and stated that they will provide further details once the CCBOE discloses the videos to them. (*Id.*).

Plaintiffs argue that they cannot be expected to respond in such detail regarding videos that they have only viewed once, and the CCBOE advised them that they could wait to supplement their response to the interrogatory until they have the videos. (ECF No. 54 at 10). They cited a May 11, 2023 email from the CCBOE, which supposedly allowed them an extension to supplement the response until they received the videos. (ECF No. 54 at 10). However, the document that Plaintiffs referenced and attached is a May 4, 2023 email from the CCBOE's counsel that includes no such stipulation and, in fact, he directly requests supplementation to Interrogatory No. 8. (ECF Nos. 54 at 10, 54-11 at 2).

As described above, Plaintiffs should provide the information that is presently available to them irrespective of whether the discovery request is a contention interrogatory. Their response should be based on their memory, notes, or any other information that they possess or is within their control at the present time. Of course, once the CCBOE produces the videos, Plaintiffs can likely supplement additional information.

As it stands, Plaintiffs' response to the interrogatory is vague and inadequate. Plaintiffs listed several dates that C.M. and his classmates were allegedly mistreated, although the interrogatory did not request information about C.M. It is unclear if Plaintiffs meant that C.M. and his classmates were mistreated on all of those dates or some of them on certain dates. This information should be clarified. Plaintiffs should list, to the best of their ability, the instances of alleged abuse and/or neglect of C.M.'s classmates. They failed to provide any information other than the dates, and, even then, did not specify which dates related to which incidents by time, classroom, and perpetrator, as requested in the interrogatory. The Court advises Plaintiffs that they should not provide any information regarding C.M. in response to this interrogatory because it was not requested, and it makes the response needlessly confusing.

In addition, the interrogatory asked, "what specific evidence of said abuse and/or neglect is in [Plaintiffs'] possession." (ECF No. 54 at 9). Plaintiffs responded with a list of witnesses who can testify as to what was seen in the videos. (*Id.* at 10). While the list of witnesses might be helpful, it does not directly respond to the question posed. The CCBOE asked about evidence that is in Plaintiffs' possession, not about witnesses that Plaintiffs can offer to support their assertions. Thus, Plaintiffs' response should additionally be supplemented to indicate what evidence Plaintiffs possess that is

responsive to the interrogatory. If the answer is none, Plaintiffs shall state the same. They can certainly supplement their response at a later date, if they discover evidence, such as video surveillance, that supports their claims. The Court **GRANTS** the motion to compel concerning this interrogatory and **ORDERS** Plaintiffs to supplement their response within **fourteen (14) days**.

### 3. Interrogatory No. 9

The CCBOE asks Plaintiffs to list "all evidence that John Baker committed any inappropriate touching of C.M. at any time in question as alleged throughout the Complaint." (ECF No. 57 at 4). Plaintiffs objected on the basis that this is a contention interrogatory, and the information is within Defendants' control and more easily accessible to them, such as video footage of Baker with C.M. (*Id.* at 4-5). Notwithstanding the objections, Plaintiffs identified that they were provided an affidavit from Baker in which he admitted to removing C.M. from his classroom and school building without parental consent, and his account of what he did with C.M. is not consistent with C.M.'s abilities. (*Id.* at 5).

Plaintiffs again appear to argue their case instead of responding to the question posed. The interrogatory only asks for evidence of Baker inappropriately touching C.M. It is irrelevant to this discovery request whether Baker removed C.M. from his classroom or what they did together unless those specific facts involved Baker inappropriately touching C.M. Plaintiffs must supplement their response to specify how the facts that they listed involved Baker inappropriately touching C.M., or they should eliminate the extraneous information. The purpose of discovery is to clarify the basic issues between the parties and ascertain the facts, or information as to the existence or whereabouts of facts, relative to those issues. *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). A party's

answer that is muddled with non-responsive information undermines those objectives. As far as this being a contention interrogatory, Plaintiffs should provide the information that they currently have and supplement later, if necessary. The Court **GRANTS** the motion to compel concerning this interrogatory and **ORDERS** Plaintiffs to supplement their response within **fourteen (14) days**.

### 4.  Interrogatory No. 24

The CCBOE asked Plaintiffs to identify the nature, evidence or indication of injury, extent and duration of injury (including whether it is permanent), and the medical providers that C.M. saw regarding each physical and/or psychological injury that C.M. allegedly suffered. (ECF No. 57 at 5). Plaintiffs repeated from their complaint the instances that C.M. was grabbed, restrained, left in his own waste, and unable to communicate, but they did not specify anything about his alleged injuries. (*Id.* at 6). Plaintiffs stated that C.M. underwent an "invasive forensic examination" as a result of Defendants' actions, yet they did not provide any information about it.

Plaintiffs' answer is mostly non-responsive. It describes the alleged acts of abuse that happened to C.M., which the CCBOE already knows because the same allegations are described in the complaint. The CCBOE did not ask Plaintiffs to restate the alleged acts of abuse and/or neglect listed in the complaint. The interrogatory requests information about the ***injuries*** that C.M. suffered as a result of the alleged neglect and/or abuse; for example, injuries could include psychological trauma, nightmares, bruises, or weight loss. The forensic examination that Plaintiffs mentioned is especially pertinent in this regard because the interrogatory asks about providers that C.M. saw regarding his injuries. Yet, Plaintiffs glossed over this information. They did not describe the nature of injury that prompted the examination, who performed the examination,

any evidence or indication of injury, or the extent and duration of injury. That is the information solicited by this discovery request. While some of it may be unknown or subject to further development, Plaintiffs must supplement their response to this interrogatory with the information that is currently available to them. The Court **GRANTS** the motion to compel concerning this interrogatory and **ORDERS** Plaintiffs to supplement their response within **fourteen (14) days**.

### 5.  Request for Production No. 3

The CCBOE requests copies of any bills and/or expenses that were incurred by or on behalf of C.M. as a result of the incidents described in the complaint. (ECF No. 57 at 6). Plaintiffs responded that C.M. does not have any documents that are responsive to this request. (*Id*.). They explain in response to the motion to compel that this request was never mentioned in the meet and confer correspondence or discussions, and they plainly stated that they do not have any responsive documents. (ECF No. 54 at 13). Given those factors, Plaintiffs fully answered the request for production. It is unclear what the CCBOE is asking the Court to compel. It cannot order Plaintiffs to produce documents that they do not possess or control, and certainly cannot order them to produce documents that do not exist. *See* Fed. R. Civ. P. 34(a)(1) (stating that a party can serve a request for production of document within a party's possession, custody, or control). The Court **DENIES** the motion to compel concerning this discovery request.

### 6.  Request for Production No. 10

This request seeks "other documents," such as invoices or medical records, related to C.M.'s claims for injuries and/or damages. (ECF No. 57 at 7). Plaintiffs assert that they produced all responsive documents, including the medical records from C.M.'s providers. (ECF No. 54 at 14). Conversely, the CCBOE contends that there are still

outstanding documents that Plaintiffs have not provided. (ECF No. 57 at 7). The CCBOE does not specify precisely what documents Plaintiffs agreed to provide but have not yet provided. (*Id*.). The Court will not rummage through numerous meet and confer letters, motions, and other documents—like a pig searching for truffles—in an effort to ascertain the factual basis of a party's motion. Given the available information, the additional documents which Plaintiffs stated they would supply were medical records related to C.M.'s conditions, which they contend have all been produced. (ECF Nos. 40 at 12-13, 54 at 14, 57 at 7-8).

The only other document discussed by the CCBOE is supposedly listed in Plaintiffs' Privilege Log as "TM Video Notes" and described as "Teresa Mills' notes from watching classroom videos." (ECF No. 40 at 12-13). The CCBOE argues that, because Plaintiff Teresa Mills is not an attorney, her notes do not qualify as privileged work product. (ECF Nos. 40 at 13, 57 at 8). The CCBOE did not attach the Privilege Log to its motion or reply. (ECF Nos. 40, 57). Therefore, it has not provided the necessary information for the Court to evaluate the claimed privilege or determine whether the document should be produced. Furthermore, the CCBOE's argument is unavailing that Plaintiff's notes cannot qualify as work product because she is not an attorney. The work-product doctrine shields from discovery documents and things prepared **by a party** or its representative in anticipation of, or secondary to, litigation. *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947); *see* Fed. R. Civ. P. 26(b)(3). The fact that the person who prepared the document is not an attorney is not determinative of the issue. The Court **DENIES** the motion to compel regarding this request.

### 7. Request for Production No. 14

This request asks Plaintiffs to produce all information stored from the

communication device that C.M. used outside of school for the past five years, including

messages, usage data, and tracking information. (ECF No. 57 at 8). Plaintiffs responded:

> None. C.M.'s communication device is used only for communication. It
> was configured by Diversified Assessment and Therapy Services, and thus
> C.M.'s parent is unable to access the settings or pull data regarding usage.

(*Id.*). Plaintiffs do not oppose the CCBOE's request to forensically examine the device.

(ECF No. 54 at 18). The issue is simply logistics because C.M. actively uses the device as

his primary means of communication, and it would be harmful to deprive him of it. (*Id.*

at 18-19). Plaintiffs argue that they reached out to the CCBOE offering to contact

Diversified about "pull[ing] the data," or, if the CCBOE wanted to forensically examine

the device, Plaintiffs had no objection to that method. (*Id.* at 19). Plaintiffs asked how

long C.M. would be deprived of his device to conduct the examination, and the CCBOE

supposedly refused to engage in that conversation. (*Id.*). In reply, the CCBOE states that

it is willing to withdraw the motion to compel concerning this discovery request upon

Plaintiffs' agreement to make the device available for forensic examination. (ECF No. 57

at 8).

Given those representations, the Court **GRANTS** the motion to compel

concerning this request for production to the extent that it **ORDERS** the parties to meet

and confer within **fourteen (14) days** to establish a mutually acceptable protocol for

performing the forensic examination of C.M.'s out-of-school communication device.

### 8. Request for Production No. 25

The CCBOE asks Plaintiffs to produce all photographs and videos of C.M. for the

past five years and describe the context of the same, such as whether it is a family

gathering, holiday, birthday, vacation, and so forth. (ECF No. 57 at 8). Plaintiffs

produced 38 videos of C.M. for the period of six months preceding the acts alleged in the

complaint. (ECF No. 54 at 17). Defendant contends that the production is insufficient because their experts will require one year of video footage to establish a baseline for C.M.'s condition and/or behavior before the abuse/neglect. (ECF No. 57 at 9).

Concerning the relevance of this information, Plaintiffs allege that Defendants' actions caused them to suffer emotional distress, reasonable apprehension of bodily harm to C.M., and loss of enjoyment of life. (ECF No. 1 at 22, 27, 28, 31, 33, 39, 40, 41, 42, 45, 47). Therefore, as the CCBOE notes, Plaintiffs placed C.M.'s physical and emotional conditions at issue. (ECF No. 57 at 9). The Court finds that the information sought is relevant to the claims and defenses in this action, but the discovery request is overly broad in scope and disproportionate to the needs of the case. The alleged abuse occurred when Plaintiff was approximately 15 years old, yet this request solicits pictures and photographs of him as young as 10 years old. (ECF No. 1 at 4, 6). Information dating back five years earlier seems to be of very little relevance to compare C.M.'s mental and emotional state before and after the alleged abuse.

However, the Court agrees that the proposed limitation of six months preceding the incidents described in the complaint does not likely produce sufficient information for the CCBOE to evaluate. Balancing the relevant considerations, the Court finds that Plaintiffs should produce videos of C.M. for one year before C.M. began attending Huntington High School. Plaintiffs have already produced six months of the videos. Thus, the production of the additional six months should not be an overly burdensome task, and it is likely to provide sufficient information of C.M.'s physical, mental, and emotional state for the CCBOE to review.

The Court **GRANTS** the motion to compel concerning this request and **ORDERS** Plaintiffs to supplement their response within **fourteen (14) days** of this

Order to include videos that have not been produced of C.M. beginning on August 22, 2021.

### B. CCBOE's Motions to Compel Responses Regarding Teresa and Clinton Mills

The CCBOE also seeks an order compelling Plaintiffs Teresa and Clinton Mills to respond to discovery requests concerning their alleged injuries. (ECF Nos. 41 and 42).

#### 1. Requests for Production No. 10

The CCBOE asked Teresa and Clinton Mills to produce all documents, such as medical records and bills, related to their claims for injuries and/or damages. (ECF No. 56 at 3, 4). Teresa Mills produced some documents and further stated that she requested additional records related to her emotional distress, which she would supplement upon receipt. (*Id.* at 3). Clinton Mills responded that he did not receive any responsive documents from his records request, but he was submitting new requests and would supplement his response. (*Id.* at 4).

The CCBOE contends that Plaintiffs still have not supplemented their production, as promised. (*Id.* at 3, 4). Thus, it seeks a court order compelling them to produce the documents. Given Plaintiffs' responses and representations, there is nothing for the Court to compel at this point. Plaintiffs do not oppose producing the requested documents; have produced what is currently in their possession; and requested their medical records from their providers, which they shall supplement. Plaintiffs are obligated under the Federal Rules of Civil Procedure to supplement their responses in a timely manner. Fed. R. Civ. P. 26(e)(1)(A). If they fail to do so, they cannot use that information to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or was harmless, and they may be subject to additional

sanctions. Fed. R. Civ. P. 37(c)(1).

The only specific responsive document that the CCBOE identifies that Plaintiffs have in their possession, but have not produced, is the "TM Video Notes" discussed above, which is described in the Privilege Log as "Teresa Mills' notes from watching classroom videos." (*Id.* 3, 5). Again, the CCBOE argues that Ms. Mills is not an attorney and her notes do not qualify as privileged work product. (*Id.*). However, it does not attach the Privilege Log to its motion or reply or cite anywhere that can be found in the record. (*Id.*). Furthermore, as discussed, the work product doctrine applies to documents prepared by or for a party, which includes individuals other than counsel. *Hickman*, 329 U.S. at 511-12; Fed. R. Civ. P. 26(b)(3). Plaintiffs argue that Teresa Mills took notes as she watched the videos of her child in anticipation of litigation because she was concerned with how he was being treated at school. (ECF No. 53 at 6). They contend that the CCBOE possesses the videos and has no need, let alone a substantial need, to review Teresa Mills's notes regarding those videos. (*Id.*). Given that the CCBOE has not offered persuasive argument or evidence that any documents should be compelled, and Plaintiffs have satisfied their burden in opposition, the Court **DENIES** the motions to compel regarding these requests.

### 2.  Requests for Production No. 11

These requests seek Plaintiffs Teresa and Clinton Mills's medical records, including mental health records, for any treatment that they received in the past five years. (ECF No. 56 at 3-5). Teresa Mills submitted the same supplemental response as she did to the previous request for production, stating that she attached responsive documents and requested additional records related to her emotional distress, which she would supplement when she received them. (*Id.* at 4). Clinton Mills also provided

generally the same supplemental response as he did to the previous request for production, except that he clarified that he has not received therapy, counseling, psychiatric, or psychological treatment. (*Id.* at 5). Clinton Mills stated that he would otherwise submit new records requests and supplement his response. (*Id.*).

The CCBOE does not identify any deficiencies in Plaintiffs' responses. Plaintiffs have provided the responsive documents that they currently possess and requested additional records from their providers, which they will supplement upon receipt. Thus, the Court **DENIES** the motions to compel regarding these requests.

### C. Plaintiffs' Motion to Compel Responses from the CCBOE

Plaintiffs Teresa and Clinton Mills seek an order compelling the CCBOE to respond to their discovery requests. (ECF No. 48).

#### 1. Request No. 2

Plaintiffs seek videos of C.M.'s classrooms from August 27, 2022 to the present. (ECF No. 48 at 5). The CCBOE objected that the request sought irrelevant information; was overly broad and unduly burdensome; and would require "blurring" of other minors' faces, which would be labor and cost intensive. (*Id.*). The CCBOE nonetheless agreed to produce "appropriately blurred video" for the dates that Plaintiffs alleged specific acts that resulted in harm in the Complaint, including August 31 and September 14, 15, 21, 22, and 23, 2022. (*Id.*).

In response to the motion to compel, the CCBOE argues that video footage on or after October 20, 2022, when C.M. was no longer a student at Huntington High School, is not relevant to Plaintiffs' claims or proportional to the needs of the case. (ECF No. 55 at 4). In addition, the CCBOE reiterates that, in order to comply with the request, they would be required to blur the faces of students other than C.M. and/or provide notice to

the parents of students depicted in the videos. (*Id*. at 6). They claim that the "unbearable burden and expenses" that would be incurred to produce the video footage is outweighed by any slight benefit of the footage to Plaintiffs. (*Id*. at 8). Finally, the CCBOE claims that this request is a fishing expedition, as Plaintiffs do not allege any serious injuries, and the complaint is mostly based on speculation and conjecture. (*Id*.).

Plaintiffs, in reply, note that they communicated to the CCBOE that they do not seek any videos after C.M. was removed from school on October 20, 2022. (ECF No. 59 at 2). Plaintiffs additionally argue that, even if classroom videos are protected by the Family Educational Rights and Privacy Act (FERPA), as the CCBOE suggests, that statute allows for education records to be produced pursuant to court order. (*Id*. at 4). Plaintiffs alternatively posit that giving notice to the parents of other students in the videos cannot be overly burdensome as C.M. was in a special needs classroom with a small number of classmates. (*Id*.). Finally, Plaintiffs point out that the CCBOE does not dispute that the Court's protective order is sufficient to protect the privacy of other children who may appear in the videos. (*Id*. at 5).

The Court agrees with the CCBOE's relevance objection concerning any videos after C.M. was removed from school. This lawsuit concerns how C.M. was treated at Huntington High School. Therefore, only video footage of when C.M. attended the school is relevant to the claims and defenses in this action. However, the CCBOE has not offered any support for its burdensomeness claim based on FERPA. C.M. was a student at Huntington High School for less than two months, and he only attended school for five hours per day for the majority of that period. (ECF No. 1 at 6, 18). This request only concerns footage of C.M.'s classrooms, which is a limited amount of information, and the footage is directly relevant to Plaintiffs' claims that C.M. was mistreated in his

classroom and improperly removed from his classroom. Any suggestion that video footage of C.M. in his classroom, where the majority of the alleged abuse and neglect took place, is of limited evidentiary value is entirely unavailing.

The CCBOE has not offered any reasons that the Protective Order, (ECF No. 28), is inadequate to address privacy concerns. However, even assuming *arguendo* that the CCBOE is correct that it must blur the faces of other students that appear in the videos or notify their parents, the CCBOE does not show that it would impose a substantial burden in proportion to the needs of this case. The proposed figure of $350,000 to blur the video footage also encompasses responding to another discovery request, which involves different parameters (the hallways, baseball field, and anywhere else that C.M. might have been on certain dates). Therefore, it does not accurately estimate the cost of responding to this request for production or support the CCBOE's burdensomeness argument.

For the above reasons, the Court **GRANTS** Plaintiffs' motion to compel concerning this request and **ORDERS** the CCBOE to supplement its response within **fourteen (14) days** of this Order to include videos depicting C.M.'s classrooms when C.M. attended Huntington High School. Specifically, the supplemental production shall include any videos that have not been produced within the timeframe of 7:30 a.m. to 3:15 p.m. on August 22, 2022 through August 25, 2022 and 7:30 a.m. to 12:30 p.m. on August 26, 2022 through October 19, 2022. *See* (ECF No. 1 at 6, 18; 48 at 7) (concerning the dates and times of C.M.'s attendance). The CCBOE can blur the faces of other students and/or produce the videos subject to the Protective Order, (ECF No. 28), or obtain the permission of the students' parents to allow their images to appear, to the extent that it deems it necessary.

### 2. Request No. 3

Plaintiffs also seek production of all videos indicating C.M.'s whereabouts at Huntington High School from August 22, 2022 to October 19, 2022. (ECF No. 48 at 5). The CCBOE provided the same response and objections as it did to Request for Production No. 2. (*Id*.). The CCBOE argues in response to the motion to compel that Plaintiffs are asking them to review thousands of hours of footage in which C.M. is not even depicted, which is neither relevant nor proportional to the needs of the case. (ECF No. 55 at 6).

At a minimum, the information sought in this discovery request is relevant to Plaintiffs' claims that C.M. was improperly taken from his classroom. It is also relevant to show C.M.'s emotional and physical state during the relevant time frame and whether he was mistreated in other portions of the school. As to the scope of the request, Plaintiffs are not asking the CCBOE to review and produce videos of the entire school for the entire school day. (ECF No. 59 at 2). Plaintiffs **only seek videos that show C.M.**, which is specified in the request. He was generally only at school for five hours per day, and he spent most of the day in his classroom. (*Id*.). Thus, this request only encompasses the limited period of time that C.M. was outside of his classroom because the classroom footage was already provided in response to Request for Production No. 2. (*Id*.). The CCBOE should know exactly what dates and times to search the rest of the footage after reviewing C.M.'s classroom videos pursuant to Request for Production No. 2. The scope of this request is not nearly so broad as the CCBOE seems to argue. The CCBOE need not review footage from 10 hallway cameras and other cameras for the entire time period, as it suggests. (ECF No. 55 at 5-6). Rather, the CCBOE must only review the specific footage tracking C.M.'s movements when he left the classroom. For

instance, if C.M. was in his classroom for hours, clearly the CCBOE would not need to search the other cameras to determine his whereabouts during that time.

The CCBOE has not met its burden of resisting discovery. It fails to show that the information sought is not relevant, that it is disproportionate to the needs of the case, or that it would be overly burdensome for the CCBOE to comply with the request. The CCBOE argues that it must blur the faces of the other students who may appear incidentally in the videos; however, that does not seem to be required by any law. Indeed, the information provided by the CCBOE, (ECF Nos. 55-4. 55-5), indicates that under FERPA, school videotapes showing students who are not the focus of the films, but just happen to be present in the background, are not "education records" for those students, because they are not directly related to the students. Since FERPA only protects the privacy of students' education records, it would not require any special measures to be taken for the students present in the background of the films.

Again according to the information provided by the CCBOE, school videotapes generally do not become part of an education record unless they depict a disciplinary matter, a medical emergency, a student violating the law, a student being attacked or victimized, or a specific student as the focus of the videotape. (ECF No. 55-4 at 1). It should be quite easy for the CCBOE to isolate videotapes that fall into one of those categories and determine if they constitute an education record for any particular student, which would require that student's face to be blurred. Even if blurring were required, the CCBOE has not provided a realistic estimate of what it would cost to blur the video in question, because the amount of video involving C.M. would be considerably less than the amount of video used by the CCBOE to estimate the cost. The CCBOE provided a cost that used all of the video for the school's 10 hallway cameras and C.M.'s

classroom, during all the time C.M. was at school, blurring all of the faces on the video regardless of the need to do so and regardless of whether C.M. appeared on the videotape. In essence, the CCBOE estimated the cost of blurring the faces on hundreds of hours of videotapes that Plaintiffs did not even request. Clearly, that estimate does not accurately reflect the cost of properly responding to this discovery request. Moreover, there is a protective order in place, and at this point, the videotapes are only being produced in discovery. As yet, they will not be made part of the public record. Certainly, privacy concerns can be addressed at the point that any portion of the videotapes is introduced into the Court's record.

For the above reasons, the Court **GRANTS** Plaintiffs' motion to compel concerning this request and **ORDERS** the CCBOE to supplement its response within **fourteen (14) days** of this Order to include all videos depicting C.M. at Huntington High School from August 22, 2022 to October 19, 2022. This supplemental production need not include video footage from any cameras inside of C.M.'s classroom because those videos shall be produced in response to Request for Production No. 2. The CCBOE can blur the faces of other students and/or produce the videos subject to the Protective Order, (ECF No. 28), or obtain permission of other students, to the extent that it deems it necessary.

The Clerk is instructed to provide a copy of this Order to counsel.

**ENTERED**: July 6, 2023

Cheryl A. Eifert
United States Magistrate Judge

23