IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

TERESA MILLS and CLINTON MILLS,
individually and as parents and guardians of C.M.,

Plaintiffs,

v.                                                    CIVIL ACTION NO.  3:22-0592

CABELL COUNTY BOARD OF EDUCATION,
JONNA DAVIS,
MICKEY COPLEY,
TIFFANY BLACK,
NATALIE MASTRANGELO, and
JOHN BAKER,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Partial Dismissal. ECF No. 11. In this

Motion, Defendants ask the Court to dismiss Counts II, III, VI, XIV, XV, XVI, XVII, XVIII, XIX,

and XX for failure to state a claim. *Id.* For the reasons below, the Court **GRANTS IN PART AND**

**DENIES IN PART** this Motion. *Id.* The Court **GRANTS** the Motion to Dismiss as to Counts II,

III, and XIX, and **DENIES** it as to Counts VI, XIV, XV, XVI, XVII, XVIII, and XX. *Id.*

## I.      BACKGROUND

Plaintiff Teresa Mills and Clinton Mills, individually and as parents and guardians of their

minor child C.M., bring suit against the Cabell County Board of Education (CCBOE) and a series

of CCBOE agents or employees assigned to care for C.M., including Jonna Davis, Mickey Copley,

Tiffany Black, Natalie Mastrangelo, and John Baker. Compl., ECF No. 1. They raise the following

claims against all Defendants: Negligence (Count I), Negligence Per Se (Count II), Negligent

-1-

Infliction of Emotional Distress (Count III), Disability Discrimination in Violation of the West Virginia Human Rights Act (Count VI), and Violation of the Fourteenth Amendment under § 1983 (Count XVIII). *Id.* Plaintiffs raise the following claims against the CCBOE only: Negligent Training and Supervision (Count IV), Negligent Hiring/Retention (Count V), Disability Discrimination in Violation of the Americans with Disabilities Act (Count VII), Violation of the Rehab Act (Count VIII), Failure to Make Reasonable Accommodations in Violation of the Americans with Disabilities Act (Count IX), Intentional Spoilation (Count XIX), and Negligent Spoilation (Count XX). *Id.* Finally, Plaintiff raise claims for Civil Battery (Count X) and Civil Assault (Count XI) against Defendant Black; Civil Battery (Count XII) and Civil Assault (Count XIII) against Defendant Davis; Civil Battery (Count XIV) and Civil Assault (Count XV) against Defendant Baker; False Imprisonment (Count XVI) against Defendants Black, Copley, Davis, and Baker; and Outrage (Count XVII) against all individual defendants. *Id.*

Plaintiff alleges that C.M. is a fifteen-year-old minor with Phelan-McDermid Syndrome, a rare genetic disorder that contributes to C.M.'s diagnoses of autism, epilepsy, failure to thrive, pica, and anxiety. *Id.* ¶¶ 20-22. Additionally, Plaintiff claims that C.M. has an unstable gait and suffers from constipation, cellulitis, rumination syndrome, and serious allergies to strawberries and eggs. *Id.* ¶¶ 23, 25, 29. He allegedly requires a high calorie diet of at least 2200 calories per day. *Id.* ¶ 26. As a result of these conditions, Plaintiff notes that C.M. requires supervision to assist with toileting and to ensure he is not attempting to eat inedible items, entering unsafe areas, experiencing a seizure, or choking. *Id.* ¶¶ 27-28, 32. Though nonverbal, C.M. allegedly responds to verbal and gestural prompts and is able to communicate basic needs using a communication device. *Id.* ¶¶ 24, 34, 36-38.

C.M. began attending Huntington High School on August 22, 2022. *Id.* ¶ 48. His schedule comprised four class modules taught by Defendants Davis, Copley, and Mastrangelo, as well as a lunch period. *Id.* ¶¶ 51-56. C.M.'s parents were soon confronted with a number of concerns—that C.M. was not spending sufficient time in the classroom, his toileting needs were not being met, he was not being properly cleaned following toileting accidents, he was not receiving appropriate high-calorie foods, and his communication device was not available for his use. Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 2, ECF No. 16 (citing Compl. ¶¶ 58-79, ECF No. 1). These concerns led them to request surveillance video of C.M. in his classes from CCBOE. *Id.* They allege these surveillance videos depict Defendants, *inter alia*, barricading C.M. in the corner of his classroom, grabbing his face, watching and laughing as he had a bowel movement and then spraying air freshener in his direction; failing to change his diaper or take him to the restroom; withholding food and drink; restraining C.M. in his chair; and withholding his communication device. *Id.* at 2-3 (citing Compl. ¶¶ 85, 87, 109, 111, 114, ECF No. 1). Additionally, Plaintiffs allege that Defendant Baker removed C.M. from the classroom and out of the sight of the school's video cameras on September 15 and 23, 2022. *Id.* at 3 (citing Compl. ¶¶ 89-94, 114, ECF No. 1).

Plaintiffs additionally allege that Defendant CCBOE failed to supply video footage within the seven-day window required under West Virginia law. *Id.* (citing Compl. ¶¶ 80-83, 185, 162-79, ECF No. 1). Defendant CCBOE also allegedly refused to produce video footage of the hallway and building exterior on certain requested dates—first claiming the video footage was lost, and then that the footage would take a long time to obtain. *Id.* at 3-4 (citing Compl. ¶¶ 105-07, 132-43, ECF No. 1). Finally, Plaintiffs claim that the individual defendants failed to report abuse and neglect occurring in C.M.'s classroom in violation of state mandatory reporting laws. *Id.* at 3 (citing Compl. ¶¶ 162-79).

Plaintiffs filed the Complaint in this action on December 19, 2022. Compl., ECF No. 1. In it, Plaintiffs request compensatory damages including, *inter alia*, attorneys' fees and costs, economic and non-economic damages, pre- and post-judgment interest, punitive damages, and injunctive relief to require CCBOE to correct their policies and practices. *Id.* at 47. Approximately three months later, on February 17, 2023, Defendants moved for partial dismissal. Mot. for Partial Dismissal, ECF No. 11. In the instant Motion to Dismiss, all Defendants move to dismiss Counts II, III, VI, and XIV through XX of Plaintiffs' Complaint for failure to state a claim. Mot. for Partial Dismissal, ECF No. 11. Plaintiffs oppose dismissal as to all counts listed by Defendants. Pls.' Resp. to Defs.' Mot. for Partial Dismissal, ECF No. 16. The Court addresses the parties' arguments as to each of the contested counts below.

## II.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the facts alleged in the complaint need not be probable, the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court accepts all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. If

a court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

### III.   DISCUSSION

A.  The Court need not reach Defendants' arguments as to any claims against the individual defendants in their official capacity.

As a threshold matter, Defendants withdrew their argument that Plaintiffs' claims against the individual defendants in their official capacities were improperly duplicitous of the claims against CCBOE. Reply in Supp. of Defs.' Mot. for Partial Dismissal at 2, ECF No. 19. Plaintiffs have clarified that their claims against Defendants Davis, Copley Black, Mastrangelo, and Baker are in their individual capacities only. Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 5, ECF No. 16. The issue is therefore moot, and the Court need not reach it.

B.  Because West Virginia law does not recognize a claim for negligence per se, Count II is dismissed.

Plaintiffs premise Count II on Defendants' alleged violations of two statutes—West Virginia Code §§ 49-2-803 and 18-20-11. Compl. ¶¶ 162-65, 180-84, ECF No. 1. Section 49-2-803(a) requires school personnel with "reasonable cause to suspect that a child is neglected or abused . . . or [who] observes the child being subjected to conditions that are likely to result in abuse or neglect shall immediately . . . report the circumstances" to the Department of Health and

Human Resources as well as the person in charge of the school.[1] A neglected child includes a child "whose physical or mental health is harmed or threatened by a present refusal, failure, or inability of the . . . parent, guardian, or custodian to supply the child with necessary food . . . supervision, medical care, or education." W. Va. Code § 49-1-201. An abused child is one "whose health or welfare is being harmed or threatened by a parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury upon the child." *Id.*

Section 18-20-11(a) requires the county board of education to "ensure placement of video cameras in self-contained classrooms." The school principal or other designee is required to view "no less than 15 minutes of the video of each self-contained classroom at the school . . . no less than every 90 days." W. Va. Code § 18-20-11(j). Should the individual reviewing the video discover an incident, that individual is required to make a report within twenty-four hours of viewing the video. W. Va. Code § 18-20-11(m). Finally, public schools are required to allow parents of students involved in alleged incidents to review video recordings within seven days of the request. W. Va. Code § 18-20-11(k)(2).

Plaintiffs allege that Defendants violated § 49-2-803 by failing to report the abuse or neglect of C.M. despite having reasonable cause to believe such abuse or neglect was occurring. Compl. ¶¶ 176-77, ECF No. 1. They further allege that Defendants violated § 18-20-11 by, *inter alia*, failing to install cameras in C.M.'s self-contained lunch classroom, failing to review videos of his self-contained classrooms, failing to report suspected abuse or neglect within twenty-four hours of viewing the videos, and failing to make the videos available for C.M.'s parents to review.

---

[1] Plaintiffs also argue that § 49-2-803(c) requires school employees to report their own abuse and neglect. Compl. ¶ 165, ECF No. 1. However, read plainly, this section only clarifies that the statute is not meant to inhibit any individual, even one who is not a mandatory reporter, from reporting instances of abuse or neglect.

*Id.* ¶ 184. Though they couch these allegations under the header "negligence per se" in their Complaint, *id.* at 23, Plaintiffs now seem to argue that the violations of these statutes actually constitute *prima facie* evidence of negligence, Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 6, ECF No. 16. Likewise, in their Complaint, Plaintiffs cite *Anderson v. Moulder*, 394 S.E.2d 61 (W. Va. 1990), for the proposition that "[v]iolation of a statute is *prima facie* evidence of negligence." Compl. ¶ 161, ECF No. 1 (quoting Syl. Pt. 1, *Anderson*, 394 S.E.2d at 61). Defendants respond that Plaintiffs have incorrectly conflated negligence per se with *prima facie* negligence, when the two are actually distinct legal theories. Reply in Supp. of Defs.' Mot. for Partial Dismissal at 3, ECF No. 19.

The Court agrees with Defendants.  West Virginia law does not provide a cause of action for negligence per se. Rather, "the violation of a statute is *prima facie* negligence and not negligence per se. " *Waugh v. Traxler*, 412 S.E.2d 756, 759 (W. Va. 1991) (quoting *Spurlin v. Nardo*, 114 S.E.2d 913, 918 (W. Va. 1960)); *see also State ex rel. W. Va.-Am. Water Co. v. Webster*, 888 S.E.2d 448, 458 n.9 (W. Va. 2023) (noting a party's improper attempt to argue that violation of a statute constitutes negligence per se). Defendants concede that *C.C. v. Harrison County Board of Education*, 859 S.E.2d 762 (W. Va. 2021) "appears to recognize a cause of action for negligence per se." Reply in Supp. of Defs.' Mot. for Partial Dismissal at 3, ECF No. 19. However, the Court notes that *C.C.* treats the plaintiff's negligence per se claim as one for simply negligence—for example, in it, the West Virginia Supreme Court lists the elements of a negligence claim, rather than the elements for a negligence per se claim. 859 S.E.2d at 771. Regardless, this Court finds it proper to adhere to the weight of authority. As this Court and others within the District have repeatedly held, West Virginia law does not support claims for negligence per se. *Barker v. Meador*, No. 3:20-0233, 2021 WL 849231, at *3 n.1 (S.D.W. Va. Mar. 5, 2021);

*Courtland Co., Inc. v. Union Carbide Corp.*, No. 2:19-CV-00894, 2020 WL 5047131, at *15 (S.D.W. Va. Aug. 26, 2020); *Mullins v. Ethicon, Inc.*, No. 2:12-CV-02952, 2017 WL 275452, at *2 (S.D.W. Va. Jan. 19, 2017).

Because West Virginia law does not support a cause of action for negligence per se, the Court does not reach Defendants' additional arguments concerning Count II. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Count II. Mot. for Partial Dismissal, ECF No. 11. The Court notes, however, that Plaintiffs have stated a claim for Negligence in Count I of their Complaint and "re-allege and incorporate by reference each and every reference contained above," including allegations that CCBOE failed to place a video recording device in C.M.'s lunchroom and failed to provide C.M.'s parents with video recordings within the seven-day window, among others. Compl. ¶¶ 82, 86, 146, ECF No. 1. In proving their claim for negligence in Count I, Plaintiffs are welcome to argue that the aforementioned violations of West Virginia Code §§ 49-2-803 and 18-20-11 provide *prima facie* evidence of negligence.

C.  Plaintiffs have not stated a claim for negligent infliction of emotional distress (Count III).

In Count III of their Complaint, Plaintiffs raise a state law claim for negligent infliction of emotional distress (NIED) against all Defendants. Compl. ¶¶ 193-203, ECF No. 1. Count III arises from allegations that C.M.'s parents experienced serious emotional distress from viewing video recordings of C.M. "being ignored, neglected, deprived of food and drink, left in [his] urine and feces, pushed, barricade [sic] in a corner, mocked and laughed at, and ultimately being taken from the room by an unknown man for an extended periods [sic] of time." Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 8, ECF No. 16

West Virginia law, in limited circumstances, allows plaintiffs recover for emotional distress arising from witnessing injury to another person. *State ex rel. Maxxim Shared Servs., LLC*

*v. McGraw*, 835 S.E.2d 590, 596 (W. Va. 2019) (listing cases). In proving NIED, a plaintiff must show "the defendant's negligent conduct caused the victim to suffer critical injury or death, and that the plaintiff suffered serious emotional distress as a direct result of witnessing the victim's critical injury or death." *Id.* at Syl. Pt. 3. Even if the distress did not result in physical injury, a defendant may still be liable for NIED "if the serious emotional distress was reasonably foreseeable." Syl. Pt. 1, *Heldreth v. Marrs*, 425 S.E.2d 157, 158 (W. Va. 1992). When assessing foreseeability, courts look to four factors:

> (1) whether the plaintiff was closely related to the injury victim;
> (2) whether the plaintiff was located at the scene of the accident and is aware that it is causing injury to the victim;
> (3) whether the victim is critically injured or killed; and
> (4) whether the plaintiff suffers *serious* emotional distress.

Syl. Pt. 3, *Maxxim Shared Servs.*, 385 S.E.2d 590 (quoting Syl. Pt. 2, *Heldreth*, 425 S.E.2d 157). "Closely related" generally refers to marital and blood relations. *Id.* at 596 (listing cases).

Defendants provide two arguments as to why this claim should be dismissed. First, they contend that Plaintiffs do not fit in the narrow set of circumstances in which an NIED sans an accompanying physical injury would be permitted. Defs.' Mem. of L. in Supp. of Mot. for Partial Dismissal at 6, ECF No. 12. Second, in their Reply, Defendants add the argument that Plaintiffs cannot have witnessed the alleged injury-producing event without having been present at the scene. Reply in Supp. of Defs.' Mot. for Partial Dismissal at 11, ECF No. 19. In response to Defendants' first argument, Plaintiffs note that in the absence of a physical injury, West Virginia law merely requires a plaintiff to show that the emotional distress was serious from the point of view of an ordinarily sensitive person. Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 7-8, ECF No. 16 (quoting *Mays v. Marshall Univ. Bd. of Governors*, No. 14-0788, 2015 WL 6181508, at *4 (W.

Va. Oct. 20, 2015)). Because Defendants only raised the second argument in their Reply, Plaintiffs did not have a chance to respond to it.

### 1. *Serious emotional distress*

Starting with the first issue, the seriousness of the emotional distress, the Court finds that it is plausible that an ordinary person would experience serious emotional distress based on the facts pleaded.  An individual may recover for NIED absent accompanying physical injury "upon a showing of facts sufficient to guarantee that the emotional damages claim is not spurious." Syl. Pt. 2, *Ricottilli v. Summersville Mem'l Hosp.*, 425 S.E.2d 629 (W. Va. 1992). The Supreme Court of Appeals of West Virginia has recognized that a claim of negligent infliction of emotional distress sans physical injury would be valid where a plaintiff witnessed a closely related person suffer critical injury or death, Syl. Pt. 1, *Heldreth*, 425 S.E.2d 157; where a plaintiff was negligently exposed to disease and the plaintiff was afraid of contracting that disease, Syl. Pt. 12, *Marlin v. Bill Rich Constr., Inc.*, 482 S.E.2d 620 (W. Va. 1996); and in instances in which a corpse has been negligently mishandled, *Ricottilli*, 425 S.E.2d. at 634-35.

Defendants seem to argue that Plaintiffs' NIED claim must fail merely because Plaintiffs do not allege "that they witnessed the critical injury or death of a close relative nor that they were exposed to any disease." Defs.' Mem. of L. in Supp. of Mot. for Partial Dismissal at 6, ECF No. 12. Defendants supply no caselaw to support the idea that these are the only available avenues for NIED, nor do they present any argument as to why Count III does not meet the applicable standard for NIED claims absent a physical injury.  That is perhaps because there is no caselaw supporting such a proposition. Rather, in *Mays*, the Supreme Court of Appeals of West Virginia reiterated that an NIED claim is plausible so long as the emotional distress was "serious from the point of view of an ordinarily sensitive person, not a supersensitive person." 2015 WL 6181508, at *4. Here, it

is plausible that an ordinarily sensitive parent would experience serious distress after watching the types of neglect and abuse alleged in Plaintiffs' Complaint. Plaintiffs have sufficiently pleaded the element of an NIED claim requiring serious emotional distress.

2. *Foreseeability*

Plaintiffs, however, have not pleaded facts sufficient to establish that they witnessed the alleged injury-producing events, as C.M.'s parents were neither present during the alleged abuse nor did they observe it contemporaneously. They have not, therefore, met the requirement of foreseeability—that they "were present at the scene of the injury-producing event at the time it occur[red] and [were] aware that it [was] causing injury to the victim." *Sweat v. West Virginia*, No. 3:16-5252, 2016 WL 7422678, at *7 (S.D.W. Va. Dec 22, 2016) (quoting *Heldreth*, 425 S.E.2d at 164). As the *Heldreth* court laid out, NIED claims are only available for a plaintiff "who witnesses or has a sensory observation of" a closely related person suffering critical injury or death. *Heldreth*, 425 S.E.2d at 161. Though C.M.'s parents need not have been "in the zone of danger" to bring an NIED claim, they do need to have witnessed or had a sensory observation of the alleged mistreatment. *Id.* at 169.

The Court leaves it to another day to trace the exact contours of what it means "to witness or have a sensory observation of"—namely, whether a plaintiff must have observed an event in person and contemporaneously in order to state a claim for NIED. Here, C.M.'s parents have not met either condition. They were not present at the scene of the injury-producing events, nor did they observe those events at the time those events occurred. Rather, they observed the alleged mistreatment long after the fact and through a video recording, rather than in person. While the California Court of Appeals has upheld a cause of action for NIED when an individual contemporaneously viewed the injury-producing event via video, the Court can locate no instances

in which a plaintiff was permitted to premise an NIED claim on viewing a video recording of an incident long after the fact. *See Ko v. Maxim Healthcare Services*, 58 Cal. App. 5th 1144 (2020) (finding that parents who watched a livestream video of a vocational nurse abusing their disabled son were sufficiently present for the purposes of an NIED claim); *but see Clifton v. McCammack*, 43 N.E.3d 213 (Ind. 2015) (finding that a father—who had viewed a news story about a fatal car crash and, fearing that his son was involved, rushed to the scene to see his son's body being taken away—had not adequately established an NIED claim). Loosening the element in this way, such that it would include a subsequently viewed video or even a vivid oral or written description of a tragic event, would result in an expansion of the NIED claim to every tort.

Because Plaintiffs have not alleged that they were present at the scene or witnessed the injury-producing events contemporaneously, the Court **GRANTS** Defendants' Motion to Dismiss as to Count III. Mot. for Partial Dismissal, ECF No. 11.

D. Plaintiffs have sufficiently pleaded that Defendants mistreated C.M. in violation of the West Virginia Human Rights Act (Count VI) because of his disability.

Defendants further argue that Count VI should be dismissed because Plaintiffs failed to allege that Defendants mistreated C.M. because of his disability, as required by the West Virginia Human Rights Act (WVHRA), W. Va. Code 5-11-9(6). Defs.' Mem. of L. in Supp. of Mot. for Partial Dismissal at 6-7, ECF No. 12. The WVHRA makes it unlawful for any agent or employee of a place of public accommodations to "[r]efuse, withhold from or deny to any individual because of his or her . . . disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges, or services of the place of public accommodations." W. Va. Code § 5-11-9(6)(A). Pursuant to West Virginia Code § 5-11-3, a public school constitutes a "place of public accommodation," and C.M. constitutes an individual with a disability.

-12-

In seeking to dismiss this count, Defendants argue that the Complaint does not state any facts indicating that Defendants mistreated C.M. because of his disability. Defs.' Mem. of L. in Supp. of Mot. for Partial Dismissal at 6-7, ECF No. 12. This argument is meritless—as Plaintiffs point out, the facts pleaded create a reasonable inference that but for his disability, Defendants would not have mistreated C.M. Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 8-10, ECF No. 16. Plaintiffs clearly allege that the alleged neglect and mistreatment stemmed, at least in part, from Defendants' knowledge that C.M. was nonverbal and could not communicate the neglect and mistreatment to his parents. Compl. ¶ 238, ECF No. 1. Furthermore, much of the alleged belittlement and maltreatment centered on C.M.'s disability. Plaintiffs claim, for example, that Defendant Copley mocked C.M.'s communication device and questioned why he was in school. *Id.* ¶ 85 C.M.'s communication device ties back to his being nonverbal, and given the long history of truancy laws, Defendant Copley's alleged question as to why C.M. was in school can only be in reaction to his being a child with a disability in school. Plaintiffs also clearly allege that the wrongful conduct arose because C.M. was disabled. *Id.* ¶¶ 237-40, 255-56. These allegations, among others in the Complaint, create at least a plausible inference that C.M. was mistreated or neglected because of his disability.

Drawing on its judicial experience, common sense, and the factual heft of the Complaint, the Court finds it plausible that the alleged neglect and mistreatment occurred because of C.M.'s disability. *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017). Defendant's Motion to Dismiss as to Count VI is therefore **DENIED**. Mot. for Partial Dismissal, ECF No. 11.

E.  The Complaint has alleged facts sufficient to state a plausible claim for civil battery (Count
XIV) and civil assault (Count XV) against Defendant Baker.

Next, Defendants argue that Plaintiffs have failed to state claims for civil battery (Count
XIV) and civil assault (Count XV) against Defendant Baker. Defs.' Mem. of L. in Supp. of Mot.
for Partial Dismissal at 7-10, ECF No. 12. Defendants contend that Plaintiffs have not supplied
sufficient facts—rather, Plaintiffs have premised these counts on the allegation that Defendant
Baker removed C.M. from the classroom, admitting they do not know what happened to C.M.
during this period of time. *Id.* at 8-9. Plaintiffs respond that civil battery and civil assault can be
reasonably inferred because "Defendant Baker, a man C.M.'s parents did not know, removed C.M.
from his self-contained classroom on more than one occasion for extended periods of time." Pls.'
Resp. to Defs.' Mot. for Partial Dismissal at 10, ECF No. 16 (citing Compl. ¶¶ 90-94, 114, ECF
No. 1). They contend that these counts are further supported by the fact that C.M. was removed
from an area with video monitoring; Defendants Baker and CCBOE have failed to sufficiently
account for what happened during those periods of time; and Defendant CCBOE had, at least at
the time of the Complaint, refused to provide C.M.'s parents with hallway and exterior surveillance
videos. *Id.* at 10-11 (citing Compl. ¶¶ 89-105, 114-16, 120, ECF No. 1).

To raise a state law claim for civil battery, a plaintiff must show that "(a) [the defendant]
act[ed] intending to cause a harmful or offensive contact with the person of the other or a third
person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person
of the other directly or indirectly results." *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 494
(2004) (quoting Restatement (Second) of Torts, § 13 (1965)). To raise a state law claim for civil
assault, a plaintiff must show that "(a) [the defendant] act[ed] intending to cause a harmful or
offensive contact with the person of the other or a third person, or an imminent apprehension of

such a contact, and (b) the other is thereby put in such imminent apprehension. *Id.* at 495 (quoting Restatement (Second) of Torts § 21 (1965)).

Taken together, the facts alleged in the Complaint create at least a plausible inference that civil assault and civil battery occurred during the periods that Defendant Baker removed C.M. from the classroom. Plaintiffs adequately allege that offensive or harmful contact resulted from the physical removal of C.M. from his classroom under these circumstances. Compl. ¶¶ 307-08, 312-14, ECF No. 1. Additionally, Plaintiffs explain that Defendants' failure to account for what then occurred supports an inference of harmful or offensive contact. Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 10-11, ECF No. 16 (citing Compl. ¶¶ 89-105, 114-16, 120, ECF No. 1). Particularly telling is Defendant CCBOE's changing narrative around the availability of hallway and exterior surveillance videos on the dates C.M. was removed from the classroom by Defendant Baker, as well as the fact that Defendant Baker has yet to account for what occurred when he removed C.M. from the classroom on September 23, 2022. Compl. ¶¶ 101 n.6, 140-43, ECF No. 1. Additionally, Defendant Baker provided a seemingly insufficient explanation for his activities with C.M. on September 15, 2023—while Defendant Baker claims to have taken C.M. to a baseball field "to throw a ball and to practice walking up and down the steps," Plaintiffs allege that C.M. cannot throw or catch a ball and requires the use of an assistive device to use the stairs. *Id.* ¶¶ 96-99. At the close of discovery and upon the summary judgment stage, Defendants are welcome to argue that Plaintiffs have presented insufficient evidence as to Counts XIV and XV. At that stage, it will be incumbent on Plaintiffs to present further information supporting these claims.

Defendants' Motion to Dismiss as to Counts XIV and XV is therefore **DENIED**. Mot. for Partial Dismissal, ECF No. 11.

F.  Because Plaintiffs alleged facts sufficient to indicate Defendants unlawfully detained C.M., they have stated a plausible claim for false imprisonment (Count XVI).

Next, Defendants argue that Count XVI for false imprisonment should be dismissed for failure to state a claim. Defs.' Mem. of L. in Supp. of Mot. for Partial Dismissal at 10, ECF No. 12. False imprisonment requires a showing of "(1) the detention of the person, and (2) the unlawfulness of the detention and restraint." *Reeves v. Meddings*, No. 3:20-0423, 2023 WL 1930361, at *5 (S.D.W. Va. Feb. 10, 2023) (quoting *Riffe v. Armstrong*, 477 S.E.2d 535, 552 (W. Va. 1996)). Plaintiffs premise this claim on allegations that Defendants Black, Copley, Davis, and Baker, *inter alia*, unlawfully "barricade[ed] [C.M.] in a corner of the classroom with furniture and/or physically restrain[ed] him in his chair." Compl. ¶ 319-20, ECF No. 1.

Defendants contend that Plaintiffs have not pleaded any facts to support 1) the unlawfulness of the alleged imprisonment, or 2) any malicious purpose, bad faith, and/or wanton or reckless behavior on Defendants' part. Defs.' Mem. of L. in Supp. of Mot. for Partial Dismissal at 10, ECF No. 12. Defendants argue that because C.M. requires constant supervision to ensure he does not elope or enter unsafe areas, any detention by Defendants must therefore be lawful. *Id.* Plaintiffs respond that the unlawfulness of Defendants' conduct is evidenced by allegations that 1) Defendants did not have permission to barricade C.M., and 2) there is no indication the barricading was done to ensure C.M. could not escape or harm himself. Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 11-12, ECF No. 16.

The Complaint creates at least a plausible inference that C.M. was falsely imprisoned. While Defendants correctly point out that there are conceivable and legitimate justifications for restraining C.M., the facts as pleaded do not indicate that safety concerns motivated Defendants' conduct. Rather, the Complaint alleges both that the detention was unlawful and that Defendants

Black, Copley, Davis, and Black acted with malicious purpose, in bad faith, and in a wanton or reckless manner. Compl. ¶¶ 320, 322, ECF No. 1. In *H.H. ex rel. H.F. v. Moffett*, 335 F. App'x 306 (4th Cir. 2009), the Fourth Circuit confronted a similar situation. There, a student with a disability brought a 42 U.S.C. § 1983 action against a special education teacher and teaching assistant for, *inter alia*, restraining the student in her wheelchair for extended periods of time. *Moffett*, 335 Fed. App'x at 308-09. The Court found that the teacher and teaching aide were not entitled to immunity for the conduct, as "physically restraining [the student] for hours on end, and using that time to verbally abuse her and strategize against her" violated clearly established law. *Id.* at 314.

Similarly, here, the facts as pleaded set out clearly unlawful conduct—there is no indication that C.M. was barricaded or shoved back into his seat in order to ensure his safety. Rather, the alleged false imprisonment was animated by a hostility towards C.M. Just as in *Moffett*, Plaintiffs support their allegation with examples of Defendants' malice towards C.M.—Plaintiffs claim that, among other things, Defendants laughed at and mocked C.M.'s disability, suggested that funds used towards C.M.'s education would be better spent elsewhere, and sprayed air freshener at him after he had a bowel movement. *Id.* ¶¶ 85, 111.

Because the facts as alleged create at least a plausible inference that C.M. was unlawfully detained by Defendants Black, Copley, Davis, and Baker, the Court **DENIES** Defendants' Motion to Dismiss as to Count XVI. Mot. for Partial Dismissal, ECF No. 11.

G.  The outrage claim is not duplicitous of the assault and battery claims, and Plaintiffs have pleaded facts sufficient to sustain an outrage claim.

Defendants further argue that Plaintiffs' claim for outrage (Count XVII) cannot lie. Defs.' Mem. of L. in Supp. of Mot. for Partial Dismissal at 11, ECF No. 12. First, as to Defendants Black, Davis, and Baker, they contend that the outrage claim is improperly duplicitous of Plaintiffs'

assault and battery claims, which seek to recover damages for emotional distress. *Id.* As for Defendants Copley and Mastrangelo, Defendants argue that Plaintiffs have not alleged facts sufficient to "shock the conscience." *Id.* at 11-12. In their Reply, Defendants add a new argument—that outside of the alleged assault and battery of C.M., Plaintiffs have not pleaded facts sufficient to meet the heightened standard of an outrage claim as to Defendants Black, Davis, and Baker. Reply in Supp. of Defs.' Mot. for Partial Dismissal at 15, ECF No. 19.

Plaintiffs respond that the outrage claim against Defendants Black, Davis, and Baker includes conduct outside of the alleged assault and battery of C.M., and that the conduct attributed to these defendants, as well as Defendants Copley and Mastrangelo, was of sufficiently "atrocious, extreme, and outrageous nature as to exceed all bounds of decency." Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 15, ECF No. 16. Plaintiffs point that out that they have alleged that these defendants, *inter alia*, refused to change C.M.'s soiled diaper, watched and laughed while he had a bowel movement, failed to provide him with food and drink, deprived him of his communication device, and spoke in front of him about how money spent on his education was a waste. *Id.* at 12-15 (citing Compl. ¶¶ 85, 89, 109, 114, ECF No. 1).

Starting with the issue of whether the outrage claim is duplicitous, the Court finds that it is not. Because causes of action for assault and battery allow a plaintiff to recover emotional distress damages, the West Virginia Supreme Court of Appeals "treats claims for outrage and assault and battery arising from the same event as duplicative." *Searls v. W. Va. Reg'l Jail*, 2016 WL 4698547, at *4 (S.D. W. Va. 2016) (citing Syl. Pt. 4, *Criss v. Criss*, S.E.2d 620 (W. Va. 1987)). This scheme prevents a plaintiff from "recover[ing] damages twice for the same injury simply because he has two legal theories." Syl. Pt. 7, *Harless v. First Nat'l Bank*, 289 S.E.2d 692 (1982).

-18-

Here, however, Plaintiffs have alleged conduct beyond the alleged assault and battery of C.M. They allege that Defendant Black, for example, watched C.M. have a bowel movement, left him in his feces for an extended period of time, refused to change his diaper, deprived him of his communication device, ate food "in a taunting manner" in front of him while failing to provide him with food or drink, and suggested funds spent on his education were a waste, among other things. Compl. ¶¶ 85, 111, ECF No. 1. Defendant Davis allegedly refused to change C.M.'s soiled diaper; failed to provide him with food, drink or his communication device; and permitted Defendant Black to grab and shove C.M. and physically restrain him in his chair. *Id.* ¶¶ 109, 114. Finally, Plaintiffs allege that Defendant Baker barricaded C.M. in a corner, refused to change his diaper, and deprived him of food, water, and his communication device. *Id.* ¶ 114. Because these allegations include conduct outside of the alleged assault and battery, the outrage claim is not duplicitous of the assault and battery claims against Defendants Black, Davis, and Baker. Plaintiffs, should they prevail on their outrage claim, would therefore not be permitted to recover damages twice for the same injury.

So too does the alleged conduct meet the standard for an outrage claim. To state a claim for outrage, a plaintiff must adequately allege four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Zsigray v. Langman*, 842 S.E.2d 716, 727 (W. Va. 2020) (citing Syl Pt. 3, *Travis v. Alcon Lab'ys, Inc.*, 504 S.E.2d 419 (W. Va. 1998)). Whether the conduct is outrageous remains a high standard—the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

-19-

community." *Id.* (quoting *Tanner v. Rite Aid of W. Va., Inc.*, 461 S.E.2d 149, 157 (W. Va. 1995)). In determining whether a plaintiff has alleged conduct that meets this high standard, courts undertake "a highly fact-specific inquiry into particular allegations made against particular defendants." *Jeffers v. W. Va. Div. of Corr. & Rehab.*, No. 3:19-0462, 2020 WL 521851, at *7 (S.D.W. Va. Jan. 31, 2020).

As to Defendants Black, Davis, and Baker, the Court does not find it necessary to describe in detail why laughing at the bowel movement of a nonverbal student with a disability, allowing the student to sit in his feces for an extended period of time, taunting him with popcorn while depriving him of food, and depriving him of his communication device constitutes conduct that is utterly intolerable in a civilized society. Still, the Court notes the similarity between the facts in this case and those in *Hammonds v. Wolfe*, No. 3:18-1377, 2020 WL 1243609 (S.D.W. Va. Mar. 13, 2020). There, this Court found that the plaintiff, an inmate in a correctional facility, had sufficiently alleged outrageous conduct where he claimed he was forced to "sit, stand, and sleep in the pool of contaminated water on the cement floor of an overcrowded cell with no bed or blanket and only a smock to wear." *Id.* at *6. Similarly, here, C.M. was allegedly forced to sit in his feces, deprived of food or drink, mocked and taunted, and deprived of any means by which he could communicate his needs. Compl. ¶¶ 85, 111, 114, ECF No. 1.

Likewise, Plaintiffs have sufficiently pleaded outrageous conduct as to Defendants Copley and Mastrangelo. The Complaint alleges that Defendant Copley, *inter alia*, watched C.M. have a bowel movement; left him to sit in his feces for an extended period of time; deprived him of food, drink, and his communication device; mocked C.M.'s communication device and questioned why he was in school; and laughed at and mocked his disability. *Id.* ¶¶ 85, 111. Defendant Mastrangelo allegedly refused to provide C.M. with food or drink, failed to ensure he was taken to the restroom,

and denied him access to his communication device. *Id.* For the same reasons outlined above, Court finds that the Plaintiffs have met the high standard required to state a claim for outrage against Defendants Copley and Mastrangelo.

Because the facts alleged create at least a plausible inference that Defendants' conduct was outrageous, the Court **DENIES** Defendants' Motion to Dismiss as to Count XVII. Mot. for Partial Dismissal, ECF No. 11.

H. Plaintiffs have a plausibly alleged a § 1983 claim based on violations of the Equal Protection Clause.

Defendants further argue that Plaintiffs' claim under 42 U.S.C. § 1983 (Count XVIII) contains only a "formulaic recitation of the elements" and therefore lacks the factual basis sufficient to state a claim. Defs.' Mem. of L. in Supp. of Mot. for Partial Dismissal at 13, ECF No. 12 (citing *Twombly*, 550 U.S. at 555). Additionally, Defendants contend that Plaintiffs have failed to identify which constitutional right was allegedly violated. *Id.* at 12. Both arguments lack merit— in alleging Count XVIII, Plaintiffs clearly set out that the claim stems from an alleged violation of the Fourteenth Amendment and that they seek to bring a *Monell* claim as to Defendant CCBOE. Compl. ¶¶ 329-32, ECF No. 1. In so doing, the Complaint alleges a series of facts suggesting that 1) C.M., and other students, were discriminated against on the basis of their disability, 2) Defendant CCBOE maintained a custom, policy, or practice of discriminating against students with disabilities, and 3) Defendant CCBOE failed to adequately train its employees to prevent such discrimination. *See, e.g.*, *id.* ¶¶ 331-37, ECF No. 1.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from that "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim for violation of the Equal Protection Clause, a plaintiff must

allege that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). This Court, among others, has recognized § 1983 claims premised on alleged violations of the Equal Protection Clause. *See, e.g.*, *Jones v. Marshall Univ. Bd. of Govs.*, No. 3:20-0786, 2021 WL 2744555, at *5-6 (S.D.W. Va. July 1, 2021); *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1137 (N.D. Ga. 2016) (declining to dismiss an Equal Protection claim by a student with a disability who alleged abuse by a special education teacher and a subsequent cover-up of the abuse by school officials).

Liability under § 1983 also extends to political subdivisions such as Defendant CCBOE. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). While a political subdivision is not subject to vicarious liability for the actions of its employees, *id.* at 694, it is liable when plaintiffs demonstrate "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights," *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (quoting *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994)). A policy or custom is fairly attributable to a political subdivision when enacted in four ways:

(1) through an express policy, such as a written ordinance or regulation;
(2) through the decisions of a person with final policymaking authority;
(3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or
(4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

Defendants first seek to distinguish *Jones*, arguing that it is inapposite because the central question there was whether the student's § 1983 claim was precluded by her claims arising under

Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973. Reply in Supp. of Defs.' Mot. for Partial Dismissal at 15, ECF No. 19. While Defendants are correct that the Court addressed this question in *Jones*, they ignore this Court's express determination that the student could state a § 1983 equal protection claim premised on discrimination on the basis of her disability. 2021 WL 2744555, at *6 ("While plaintiffs are not permitted to use § 1983 to vindicate the rights provided by the ADA or the Rehabilitation act . . . plaintiffs are permitted to assert alternative theories of relief that are based on the same factual predicate.").

Defendants then suggest, without explicitly arguing, that Plaintiffs have not alleged that there was discriminatory intent sufficient to establish a violation of the Equal Protection Clause. *See* Reply in Supp. of Defs.' Mot. for Partial Dismissal at 15-16, ECF No. 19 (noting that though the plaintiff in *Jones* had pleaded that she received disparate treatment from her peers on the basis of her disability, Plaintiffs "had not made any such allegations."). This argument is also off-base. As detailed in Section III.D., *supra*, the factual heft of the Complaint points to a pattern of purposeful and intentional discrimination on the basis of C.M.'s disability. And, as a number of courts have found, "a school district that treats its disabled students differently from other students by disciplining them or dealing with reports of abuse against them differently may run afoul of the equal protection clause." *Williams*, 181 F. Supp. 3d at 1137 (listing cases). Here, Plaintiffs have alleged that Defendants made a number of comments expressing hostility towards students with disabilities, and that C.M. and other disabled students received disparate treatment as a result of their disabilities. *See, e.g.*, Compl. ¶¶ 85, 111, 237-41, 334-37, ECF No. 1.

Additionally, the facts as alleged paint a picture of a school district that has not only disciplined C.M. differently than it would a student without a disability, but that also treats reports of abuse differently between students with disabilities and students without disabilities. *See, e.g.*,

*id.* ¶¶ 237-40, 334-37, ECF No. 1. Plaintiffs claim that C.M. was neglected, belittled, and barricaded in a corner because of his disability and was subsequently denied the advantages and privileges of a public education. *Id.* ¶¶ 237-41. They also allege that Defendant CCBOE failed to train and supervise teachers and aides caring for special needs students, resulting in "multiple instances in recent years whereby Defendant CCBOE's personnel have behaved inappropriately and whereby Defendant CCBOE has allowed its employees to put other students, particularly students with special needs, at risk." *Id.* ¶ 333. Finally, Plaintiffs allege that other special needs students in the district have been mistreated because of their disabilities, at least one of whom has filed a lawsuit against Defendant CCBOE. *Id.* ¶ 334-35. Plaintiffs have therefore alleged a pattern of constitutional violations against Defendant CCBOE sufficient to sustain a *Monell* claim. *See, e.g.*, *Dillon v. Hall*, No. 3:21-435, 2021 WL 5761725, at *3-4 (S.D.W. Va. Dec. 3, 2021)

Because dismissal of Plaintiffs' § 1983 claim is therefore improper, the Court **DENIES** Defendants' Motion to Dismiss as to Count XVIII. Mot. for Partial Dismissal, ECF No. 11.

I.   While Defendant CCBOE is shielded from liability from the intentional spoliation claim (Count XIX), Plaintiffs have stated a claim for negligent spoliation (Count XX).

Finally, Defendants argue that 1) Plaintiffs' claims for intentional spoliation (Count XIX) should be dismissed because Defendant CCBOE is immune under the West Virginia Governmental Tort Claims and Insurance Reform Act, and 2) Plaintiffs' claim for negligent spoliation (Count XX) should be dismissed because CCBOE is a party to this action. Defs.' Mem. of L. in Supp. of Mot. for Partial at 13-14, ECF No. 12. In the alternative, they argue that the spoliation claims are "premature, unfounded, and impermissibly speculative" and are therefore insufficient to raise the right to relief above the speculative level. *Id.* at 15. Plaintiffs respond that 1) Defendant CCBOE is not immune from liability from either negligent or intentional spoliation,

2) the negligent spoliation claim is proper because Defendant CCBOE is a third party to the assault and battery claims against Defendant Baker, and 3) there are sufficient facts for the Court to infer that the videos no longer exist. Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 18-19, ECF No. 16. The Court addresses each of these arguments in turn.

   1.   *As to the claim for intentional spoliation, Defendant CCBOE is immune from liability.*

Defendant CCBOE is shielded from liability from the intentional spoliation claim (Count XIX) by the West Virginia Governmental Tort Claims and Insurance Reform Act. Section 29-12A-4 of the Act provides, in pertinent part, that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions." W. Va. Code § 29-12A-4(c)(4). Under the Act, political subdivisions cannot be held liable for intentional torts committed by its employees. *Zirkle v. Elkins Rd. Pub. Serv. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007); *Fields v. King*, 576 F. Supp. 3d 392, 401 (S.D.W. Va. 2021) (citing W. Va. Code § 29-12A-4(b)(1)). Because intentional spoliation is an intentional tort, Defendant CCBOE is immune from liability from this claim.

Further, dismissal is proper because Plaintiffs only bring this claim against Defendant CCBOE. *See* Compl. at 44, ECF No. 1. Plaintiffs argue that they have alleged that spoliation occurred by and through the acts of Defendant CCBOE's employees, pointing to an allegation that Ms. Hornbuckle-Myers, a CCBOE employee, assumed a duty to preserve the video. Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 19, ECF No. 16. Ms. Hornbuckle-Myers, however, is not a party to this lawsuit. Because Plaintiffs have not alleged intentional spoliation as to any other party in this action, the claim should be dismissed.[2]

---

[2] Plaintiffs also ask for permission to amend the Complaint to assert this count against "John Doe CCBOE employee(s) who committed the alleged spoliation." Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 19,

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Count XIX. Mot. for Partial Dismissal, ECF No. 11.

2. *The negligent spoliation claim is proper because Defendant CCBOE is a third party to Plaintiffs' claims for civil assault and civil battery against Defendant Baker.*

Count XX, which states a claim for negligent spoliation, is proper. Defendants primarily argue that this claim should be dismissed because Defendant CCBOE is a party to this action and there are other remedies to compensate Plaintiffs for any alleged spoliation. Defs.' Mem. of L. in Supp. of Mot. for Partial Dismissal at 14, ECF No. 1. Plaintiffs respond that the claim is proper because Defendant CCBOE is a third party to the civil assault and civil battery claims against Defendant Baker. Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 18, ECF No. 16.

"West Virginia recognizes spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a third party, and the third party had a special duty to preserve the evidence." *Hannah v. Heeter*, 584 S.E.2d 560, 568 (W. Va. 2003). The spoliation must trace back to a third party because "[u]nlike a party to a civil action, a third party spoliator is not subject to an adverse inference instruction or discovery sanctions." *Id.* To state a claim for negligent spoliation of evidence, a plaintiff must show six elements:

> (1) the existence of a pending or potential civil action; (2) the alleged spoliator had actual knowledge of the pending or potential civil action; (3) a duty to preserve evidence arising from a contract, agreement, statute, administrative rule, voluntary assumption of duty, or other special circumstances; (4) spoliation of the evidence; (5) the spoliated evidence was vital to a party's ability to prevail in a pending or potential civil action; and (6) damages.

*Id.* at 569–70.

---

ECF No. 16. Plaintiffs may move to amend the Complaint, and the Court will address their request at that time.

Neither the Court, nor the parties, have been able to locate any caselaw that directly addresses whether a negligent spoliation claim can lie when aimed at an entity that is a party to an action but a third party to the specific claims at issue. However, Plaintiffs are correct in noting that where Defendant CCBOE is a third party to the claims against Defendant Baker, the remedies listed in *Heeter* are insufficient to compensate Plaintiffs for any negligent spoliation. Pls.' Resp. to Defs.' Mot. for Partial Dismissal at 18-19, ECF No. 16. Take, for example, an adverse inference instruction—such an instruction could neither impute the spoliation to Defendant Baker nor could it be aimed at Defendant CCBOE, as CCBOE is not a party to these specific claims. Plaintiffs' claim for negligent spoliation is therefore consistent with the reasoning set forth in *Heeter* and can be brought against Defendant CCBOE.

Nor is the negligent spoliation claim premature, unfounded, or impermissibly speculative. Defendants argue that this claim lacks sufficient factual support because Plaintiffs were informed just ten days prior to filing the Complaint that the videos were suddenly available. Mem. of L. in Supp. of Mot. for Partial Dismissal at 15, ECF No. 1. Defendants further contend that "[t]he only inference that can be drawn is that ten days had passed since Plaintiffs' counsel had been notified that the videos were being processed." *Id.* This argument does not hold weight. In their Complaint, Plaintiffs allege that they made numerous requests to preserve classroom and hallway surveillance video, as well as numerous attempts to view these videos. Compl. ¶¶ 128-34, 137, 139, ECF No. 1. Namely, Plaintiffs asked Defendants to provide these videos on November 15, 2022, more than a month before they filed the Complaint. *Id.* ¶ 134. The Complaint further alleges that during a meeting on December 8, 2022, in which Plaintiffs expected to view the exterior and hallway surveillance videos, Plaintiffs were informed that Defendant CCBOE was now unable to access them. *Id.* ¶¶ 138, 140. Plaintiffs further allege that only upon the threat of a spoliation claim on

December 9, 2022, was Defendant CCBOE suddenly able to recover the videos, though the process was "going to be slow" to get them. *Id.* ¶¶ 141-42. Plaintiffs, therefore, have pleaded facts sufficient to raise a plausible inference that Defendant CCBOE knew of the existence of a pending or potential civil action, had a duty to preserve the video, spoliated the videos, and the videos were vital to Plaintiffs' ability to prevail in their civil assault and civil battery claims against Defendant Baker.

Because Defendant CCBOE is a third party to the civil assault and civil battery claims against Defendant Baker and because Plaintiffs have pleaded facts sufficient to support a claim for negligent spoliation, the Court **DENIES** Defendants' Motion to Dismiss as to Count XX. Mot. for Partial Dismissal, ECF No. 11.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Partial Dismissal. ECF No. 11. The Court **GRANTS** the Motion insofar as it asks the Court to dismiss Counts II, III, and XIX and **DENIES** it insofar as it asks the Court to dismiss Counts VI, XIV, XV, XVI, XVII, XVIII, and XX. *Id.*

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          August 3, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE