IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**TERESA MILLS and CLINTON MILLS**,
individually and as parents and guardians
of C.M.,

      **Plaintiffs,**

v.                              Case No.: 3:22-cv-00592

**CABELL COUNTY BOARD OF EDUCATION**,
**JONNA DAVIS, MICKEY COPLEY,**
**TIFFANY BLACK, NATALIE MASTRANGELO,**
**and JOHN BAKER,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Order Independent Psychological Evaluation of Plaintiff Teresa Mills. (ECF No. 112). Plaintiffs have filed a Response in Opposition to the Motion, (ECF No. 128), and Defendants have submitted a Reply in Support. (ECF No. 131). The relevant issues have been fully briefed, and oral argument is not necessary to resolve the dispute. For the reasons that follow, the Court **GRANTS** the Motion and **ORDERS** Plaintiff Teresa Mills to submit to a psychological evaluation by Dr. David Clayman on a date and time to be agreed upon by the parties.

**I.**      **Relevant Facts[1] and Procedural History**

Plaintiffs Teresa and Clinton Mills are the parents of C.M., a 15-year-old former student at Huntington High School ("HHS"), which is governed by the Cabell County

---

[1] The factual allegations are summarized from Plaintiffs' Complaint.

1

Board of Education ("CCBOE"). (ECF No. 1 at 2, 6). As a result of Phelan-McDermid Syndrome, C.M. is non-verbal and requires assistance with daily activities, such as toileting, traversing stairs, and other functions. (*Id.* at 4-5). He uses an electronic device, when prompted, to request food, drink, or other basic needs. (*Id.* at 5). C.M. attended HHS from August 22, 2022 through October 19, 2022. (*Id.* at 6, 18). C.M. was placed in the care of school aides, Tiffany Black and John Baker; special education teachers, Jonna Davis and Natalie Mastrangelo; and substitute teacher, Mickey Copley. (*Id.* at 6-7, 13). In addition, C.M. received behavioral services therapy from Diversified Assessment and Therapy Services.

    Plaintiffs allege that they very quickly noticed "red flags" after C.M. began school at HHS; including, problems with C.M.'s school communication device, incidents of C.M. not being properly cleaned after toileting and meals, and episodes of C.M. being absent from his classroom. (*Id.* at 7-8). Plaintiff Teresa Mills had additional concerns that she did not receive communication logs from the school on certain days, that C.M. was not receiving the high calorie foods that he required, and that his communication device was only being used sporadically for short periods of time. (*Id.* at 8-9). In October 2022, Plaintiffs viewed videos of their son's class recorded in August and September 2022. (*Id.* at 9-12, 15-17). They observed one or more of the Defendants, *inter alia*, grabbing C.M.'s face in frustration; shoving him into a chair; restraining him; barricading him in the corner of the classroom; deriding him; refusing to change his soiled diaper; ignoring him; leaving him unattended without an aide; and depriving him of his communication device, food, and drink. (ECF No. 1 at 10-12, 15-17). In a video taken on September 15, 2022, Defendant Baker took C.M. from his classroom for two hours and 45 minutes—one hour of which was spent in another classroom—and the remainder of the time which was

2

undocumented. (*Id.* at 13).

On December 19, 2022, Plaintiffs filed the instant lawsuit, asserting twenty claims, including a claim for negligent infliction of emotional distress and a claim asserting the tort of outrage. (*Id.* at 21-47). Plaintiffs alleged that they suffered injuries, including "great" mental and "serious" emotional distress, emotional distress "so severe that no reasonable person would or could be expected to endure it," reasonable apprehension of bodily harm to C.M., and loss of enjoyment of life. (*Id.* at 22, 27, 28, 31, 33, 39, 40, 41, 42, 45, 47). They sought monetary damages and injunctive relief. (*Id.* at 47).

In the course of discovery, Defendants collected medical records of Teresa Mills, which demonstrated that she had received mental health treatment in the past. Defendants now seek an independent medical examination ("IME") of Teresa Mills in order to determine the nature and extent of any preexisting psychological condition, the nature and extent of any changes to her mental health as a result of the alleged wrongdoing of the defendants, and her current and future psychological condition. At first, Plaintiffs did not object to an IME, but indicated that they were entitled to know all of the relevant details before agreeing to appear. (ECF No. 112-5). However, they now object to the proposed examination on the basis that (1) good cause does not exist for an IME; and (2) Defendants have failed to adequately identify the manner, conditions, and scope of the proposed examination. (ECF No. 128).

II. **Discussion**

Federal Rule of Civil Procedure 35 authorizes the court to order a party "whose mental or physical condition … is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." The order may only issue on good cause and adequate notice and "must specify the time, place, manner, condition,

and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ .P. 35(a)(2). The law is well-settled that the "in controversy" and "good cause" requirements of the Rule are not mere formalities; rather, they must be met with "an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder,* 379 U.S. 104, 118 (1964). Nonetheless, "there are situations where the pleadings alone are sufficient to meet these requirements." *Id.* at 119. One such situation is a tort action in which a plaintiff asserts mental or physical injury, placing "that mental or physical injury clearly in controversy and [providing] the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.*

There is no question in this case that Teresa Mills has put her psychological condition at issue, and Plaintiffs do not appear to dispute that Defendants have met the "in controversy" requirement. However, Plaintiffs argue that the "good cause" requirement has not been met because Defendants already have all the information they need in the medical records, and they can obtain any additional information through depositions and avenues of discovery less invasive than an IME. (ECF No. 128 at 3-4). This argument is not persuasive.

If the sole issue was whether Ms. Mills had a preexisting mental health condition, then a medical record confirming the existence of that condition and the date of diagnosis would be sufficient. But that is not the sole issue here. Instead, the issues are more nuanced and complex, as Defendants are attempting to determine the existence, extent, and duration of any preexisting condition; the existence, extent, and duration of any changes to that condition; and the cause of any such changes. Additionally, they seek to

discover past and future treatment courses, issues of permanency, and other related concerns. These are all matters of relevance to the cause of action and necessary to the defendants' case. *See Womack v. Stevens Transp., Inc.*, 205 F.R.D. 445, 447 (E.D. Pa. 2001). ("Good cause requires a showing that the examination could adduce specific facts relevant to the cause of action and is necessary to the defendant's case."). Defendants are entitled to a "balanced opportunity to assess the plaintiff's allegations and proof concerning emotional distress damages," and a plaintiff's chosen physician should not be the only expert who "ever actually examined the plaintiff." *Baron v. United States,* 2013 WL 3197134, at *2 (D. Me. June 21, 2013). Without the opportunity to conduct an independent medical examination, Defendants would be forced to offer a defense "limited to the mere cross-examining of evaluations offered by Plaintiff's experts" or treating physicians. *Womack,* 205 F.R.D. at 447.  Clearly, the drafters of Rule 35 sought to remedy such an inequity.

Ms. Mills is not alleging garden variety psychological distress, or even minor, transient distress; rather, the mental and emotional distress alleged in the complaint is described at various places as "serious", "severe", "great", and "so severe that no reasonable person would or could be expected to endure it." Some form of mental or emotional distress is the primary injury alleged by Ms. Mills. Accordingly, Defendants must have the opportunity to fully investigate that claimed injury.

With respect to Plaintiffs' claim that Defendants did not provide sufficient information regarding the manner, condition, and scope of the proposed IME, the Court disagrees. Rule 35 requires that the notice of IME provide the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it. Defendants identified the person who will perform the examination as Dr.

5

David Clayman, a clinical and forensic psychologist with nearly 50 years of experience in the field. (ECF No. 112-3) According to his curriculum vita, Dr. Clayman has a Ph.D. in Clinical Psychology, is licensed in the State of West Virginia, and is a Clinical Associate Professor with the West Virginia University Medical Center-Charleston Division. (*Id.*). Dr. Clayman has been involved in approximately 3500 civil and criminal cases in the State of West Virginia and has been approved as an expert in 28 counties and all federal jurisdictions. (*Id.*) Accordingly, Dr. Clayman is a suitable examiner under Rule 35. Defendants also provided an address for the examination and alternative dates.

As for the manner, scope, and conditions of the IME, Defendants supplied Plaintiffs with an explanation of the examination by Dr. Clayman. (ECF No. 131-3). In the explanation, Dr. Clayman indicated that the examination would consist of three to four major components, including a records review by him; a face-to-face interview with the examinee; psychological testing performed in person; and collateral interviews, if appropriate. (*Id.* at 1). Dr. Clayman explained the purpose of the examination, and the anticipated time frame. (*Id.* at 1-2). In a separate paper entitled "Components of a Forensic Psychological Evaluation," Dr. Clayman provided additional information about each component of the IME. (*Id.* at 3-4). Frankly, Dr. Clayman provided more information about the proposed IME than most examiners and certainly enough to satisfy Rule 35. The proposed testing is not invasive in the sense that Dr. Clayman does not intend to introduce any medical device or pharmaceutical into the body. He has made arrangements to conduct the testing over a two-day period in the event that the examinee requires rest between the tests. The entire process appears to be geared toward the convenience and comfort of the person being examined. Accordingly, the undersigned finds nothing lacking in the information provided and nothing concerning about the

manner, conditions, or scope of Dr. Clayman's proposed examination. For these reasons, the Motion is granted. The parties shall promptly meet and confer to agree upon a date and time for the examination.

The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:** December 22, 2023

Cheryl A. Eifert
United States Magistrate Judge

7