IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**TERESA MILLS and CLINTON MILLS**,
individually and as parents and guardians
of C.M.,

      Plaintiffs,

v.                                                Case No.:  3:22-cv-00592

**CABELL COUNTY BOARD OF EDUCATION**,
**JONNA DAVIS, MICKEY COPLEY,**
**TIFFANY BLACK, NATALIE MASTRANGELO,**
and **JOHN BAKER**,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' motion to compel discovery responses from the Cabell County Board of Education ("CCBOE"), (ECF No. 134). The CCBOE has filed a response in opposition to the Motion, and Plaintiffs have submitted a reply memorandum. (ECF Nos. 137, 138). The issues are fully briefed and a hearing would not assist in the resolution of this Motion. For the reasons that follow, the Motion is **GRANTED** to the extent set forth below.

I.     **Relevant Facts and Procedural History**

Plaintiffs Teresa and Clinton Mills are the parents of C.M., a former student at Huntington High School ("HHS"), which is governed by the CCBOE. (ECF No. 1 at 2, 6). As a result of Phelan-McDermid Syndrome, C.M. is non-verbal and requires assistance with daily activities, including being taken to the restroom, traversing stairs,

1

and similar functions. (*Id*. at 4-5). He uses an electronic device, when prompted, to request food, drink, or other basic needs. (*Id*. at 5).

C.M. attended HHS from August 22, 2022 through October 19, 2022. (*Id*. at 6, 18). He was placed in the care of school aides, Tiffany Black and John Baker; special education teachers, Jonna Davis and Natalie Mastrangelo; and substitute teacher, Mickey Copley. (*Id*. at 6-7, 13). School staff was supposed to provide C.M.'s parents with daily communication logs that detailed C.M.'s behavior, activities, and toileting. (*Id*. at 7). In addition, C.M. received behavioral services therapy from Diversified Assessment and Therapy Services ("Diversified") which was supervised by a Board Certified Behavior Analyst ("BCBA"). (*Id*. at 6). The BCBA trained and occasionally supervised CCBOE staff on C.M.'s programming and behavioral needs. (*Id*.).

Plaintiffs allege that they very quickly noticed "red flags" after C.M. began school at HHS, including the CCBOE failing to timely repair C.M.'s school communication device (an iPad with a Proloquo2go app); C.M. having increased toileting accidents; and C.M. coming home from school smelling like urine. (*Id*. at 7). The BCBA observed C.M. at school on September 9, 2022 and reported to Plaintiff Teresa Mills that C.M. was not being properly cleaned after toileting accidents and was eating with his fingers. (*Id*. at 7-8). When the BCBA went to observe C.M. again on September 21, 2022, C.M. was not in his classroom. (*Id*. at 8). Plaintiff Teresa Mills had additional concerns that she did not receive communication logs from the school on September 14 or 15, 2022; that C.M. was not receiving the high calorie foods that he required; and that his communication device had only been used sporadically for short periods of time. (*Id*. at 8-9).

In October 2022, Plaintiffs viewed certain videos of their son's class recorded in

August and September 2022. (*Id.* at 9-12, 15-17). They observed one or more of the defendants, *inter alia*, grabbing C.M.'s face in frustration; shoving him into a chair; restraining him; barricading him in the corner of the classroom; deriding him; refusing to change his soiled diaper; ignoring him; leaving him unattended without an aide; and depriving him of his communication device, food, and drink. (*Id.* at 10-12, 15-17). In a video taken on September 15, 2022, Defendant Baker took C.M. from his classroom for two hours and 45 minutes—one hour of which was spent in another classroom—and the remainder of the time was undocumented. (*Id.* at 13).

Plaintiffs believe that additional videos of C.M.'s classrooms taken through October 19, 2022 show further mistreatment and neglect of C.M. and his classmates. (*Id.* at 18). On October 19, 2022, Plaintiff requested that the CCBOE preserve all classroom and hallway videos of C.M. recorded on or after August 15, 2022. (*Id.* at 19). The following day, the CCBOE filed a report with Child Protective Services ("CPS") upon Plaintiff's insistence. (*Id.* at 18). Defendants Copley, Black, and Baker were briefly suspended and reinstated. (*Id.*). On November 8, 2022, Plaintiffs' counsel sent a formal litigation hold letter, requesting that the CCBOE preserve any documents, videos, audio recordings, and photographs pertaining to the whereabouts, care, and education of C.M. prepared on or after August 27, 2022. (*Id.* at 19). Plaintiffs' counsel also requested access to videos of C.M. (*Id.* at 19-20). The CCBOE's general counsel responded that certain footage was inaccessible because the camera system was replaced, but she later advised that the requested footage was "pull[ed]," and Plaintiffs could view it when it was "ready." (*Id.* at 20-21).

On December 19, 2022, Plaintiffs filed the instant lawsuit, asserting twenty claims. Plaintiffs contend that (1) all defendants are liable for negligence, negligence

3

per se, negligent infliction of emotional distress, disability discrimination under the West Virginia Human Rights Act, and violation of 42 U.S.C. § 1983; (2) the CCBOE is also liable for negligent training and supervision, negligent hiring/retention, disability discrimination under the Americans with Disabilities Act, violation of the federal Rehabilitation Act, and intentional and negligent spoliation; (3) Black, Davis, and Baker committed civil battery and assault; (4) Black, Davis, Baker, and Copley falsely imprisoned C.M.; and (5) all individual defendants are liable for the tort of outrage. (*Id.* at 21-47). Plaintiffs allege that they suffered injuries, including mental and emotional distress, reasonable apprehension of bodily harm to C.M., and loss of enjoyment of life. (*Id.* at 22, 27, 28, 31, 33, 39, 40, 41, 42, 45, 47). They seek monetary damages and injunctive relief. (*Id.* at 47).

## II. <u>Discussion</u>

Plaintiffs filed a motion to compel discovery responses under Fed. R. Civ. P. 37. The scope of discovery that is permissible in this action is set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure, which states:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-

4

536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). Yet, even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). In the event of a discovery dispute, the party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Tinsley v. OneWest Bank, FSB*, No. 3:13-CV-23241, 2014 WL 7005852, at *2 (S.D.W. Va. Dec. 10, 2014) (citations omitted). Conclusory and unsubstantiated allegations are insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

### 1. Interrogatory No. 1

This interrogatory asks the CCBOE to:

> Identify each instance, over the past 15 years, in which the CCBOE has received a litigation hold letter, request, or demand; a preservation letter, notice, request, or demand; and/or settlement request for demand from and/or on behalf of the parents(s), guardian((s), and/or custodians of a current or former CCOBE student who is/was within the special education program. This should include, but not be limited to, students with an Individualized Education Program.

The CCBOE objected to the Interrogatory on the grounds that it sought irrelevant information, sought information inadmissible under Fed. R. Evid 404(b), requested information protected by the Family Educational Rights and Privacy Act (FERPA) , 20 U.S.C. § 1232g, involved confidential settlement discussions, and was burdensome and disproportional to the needs of the case in that it requested fifteen years-worth of information about *any type of claim.* (ECF No. 138 at 1-2). Plaintiffs have now offered to limit the request to instances or occurrences where the allegations underlying the

5

requests, demands, notices, and letters involved the abuse, neglect, or discrimination of a CCBOE student in special education, or with an Individualized Education Plan ("IEP"), during the past seven years. (ECF No. 138 at 2).

For the most part, the CCBOE's objections are not persuasive. The CCBOE has previously raised FERPA in objections to discovery and knows that the law restricts disclosure of "personally identifiable information" contained in "education records." Even assuming litigation-related holds, notices, requests, letters, and demands can be considered "education records," which is questionable, the CCBOE can limit the response or redact documents to remove personally identifiable information and mark the response or documents as confidential under the existing protective order. If that process had been followed here, Plaintiffs would only have had to seek a court order to compel identifiable information if the records received merited further discovery. With respect to the objection based on Fed. R. Evid. 404(b), information need not be admissible to be discoverable. Furthermore, the CCBOE has not properly supported an objection based on the request being burdensome. Finally, relevancy is considered broadly, and Plaintiffs allege a pattern and practice of mistreatment by the CCBOE. These requests for discovery are relevant to that claim.

Courts have broad discretion in their resolution of discovery disputes. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (citation and internal markings omitted). A court may limit discovery that it finds overly broad or disproportional to the needs of the case. After considering the arguments of the parties, the Court agrees with Plaintiffs that the discovery is relevant and appreciates Plaintiffs' attempt to limit the discovery requests. Accordingly, the Court **ORDERS** the CCBOE, within **fourteen days** of the date of this Order, to

answer Interrogatory 1, as modified herein—the CCBOE shall identify each instance in the last **seven years** in which the CCBOE has received a litigation hold letter, request, or demand; a preservation letter, notice, request, or demand; and/or a settlement demand pertaining to a current or former CCBOE student **who participated in a special education program and asserted claims of abuse, neglect, or discrimination by the CCBOE or its employees or agents**. The CCBOE is **not** required to identify instances involving each student with an IEP who did **not** participate in special education classes, because IEP's are generated in situations that differ significantly from C.M.'s situation and would not be particularly relevant to this litigation. An "instance" in this case shall refer to an individual student and an individual claim. In other words, if a request, hold letter, or demand has been made relating to a student and involving one incident or one set of related incidents, the CCBOE need only identify the initial request, hold letter, preservation notice, or demand rather than every request, hold letter, notice, or demand generated in that one discrete case. However, if the same student asserts more than one separate claim involving unrelated or disconnected incidents, and which cause a separate hold letter, request, preservation notice, or demand to be issued, then that unrelated incident would constitute a separate instance.

### 2. Request For Production of Documents Nos. 1 and 3

In Request No. 1, the CCBOE is asked to produce all litigation hold letters, preservation notices, and/or settlement demands made by any parent, guardian, or custodian of a former or current CCBOE student who participated in a special education program, or had an IEP over the last fifteen years. In Request No. 3, Plaintiff seeks copies of all settlement agreements reached by the CCBOE with current or former

7

students in a special education program. Applying the same analysis as above, the Court **ORDERS** the CCBOE to produce the relevant documents, received or prepared in the last **seven years**, in which the litigation hold letter, request, preservation notice, settlement demand, or settlement agreement pertained to a current or former CCBOE student **who participated in a special education program and asserted claims of abuse, neglect, or discrimination by the CCBOE or its employees or agents**.. The CCBOE need not produce documents relating to students with IEPs who were **not** in special education. The CCBOE is **ORDERED** to produce these documents within **fourteen days** of the date of this Order.

The Clerk is instructed to provide a copy of this Order to counsel.

**ENTERED**: February 12, 2024

Cheryl A. Eifert
United States Magistrate Judge